182 N.J. Super. 427 (1982)
442 A.2d 620
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
GARY WILLIAMS, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 24, 1981.
Decided January 5, 1982.
*429 Before Judges MICHELS, McELROY and J.H. COLEMAN.
Charles J. Hanlon, Jr., Deputy Attorney General, argued the cause for appellant (James R. Zazzali, Attorney General of New Jersey, attorney; Charles J. Hanlon, Jr., of counsel; Charles J. Hanlon and Kenneth N. Lipstein, Deputy Attorney General on the brief).
Sheri Woliver, Assistant Deputy Public Defender, and Joseph Di Geronimo, Assistant Deputy Public Defender, argued the cause for respondent (Stanley C. Van Ness, Public Defender, attorney; Joseph Di Geronimo, of counsel; Sheri Woliver, on the brief).
*430 The opinion of the court was delivered by MICHELS, P.J.A.D.
Pursuant to leave granted by the Supreme Court, the State appeals from a pretrial determination of the Law Division which held that the out-of-court statement of a prosecution witness, Kevin Madison, would not be admissible in evidence as a prior inconsistent statement under Evid.R. 63(1)(a) at the trial of defendant Gary Williams.
Defendant was indicted by the Hudson County grand jury and charged with seven counts of felony murder (N.J.S.A. 2A:89-1, N.J.S.A. 2A:113-1 and N.J.S.A. 2A:113-2), one count of arson (N.J.S.A. 2A:89-1) and one count of possession of an incendiary substance for an unlawful purpose (N.J.S.A. 2A:151-59). The State's witness, Madison, had been charged in another indictment with the identical offenses with which defendant was charged. The indictments against both defendant and Madison were returned as a result of a police investigation into an incendiary fire that occurred in an apartment building located in Jersey City, New Jersey. The investigation pointed to Madison as someone who might have been involved or might provide relevant information concerning the crimes. Madison subsequently gave a signed statement to the Jersey City police detailing his own involvement in the crimes as well as that of defendant.
Madison was tried first and convicted by a jury of seven counts of felony murder and one count of arson and sentenced to State Prison for 30 years with a parole ineligibility term of ten years. Madison is presently appealing those convictions.
Prior to the trial of the indictment against defendant, a pretrial conference was held at which time the State indicated its intention to call Madison as a prosecution witness and, if necessary, to grant him immunity from the use of his testimony pursuant to N.J.S.A. 2A:81-17.3. The State had been informed by Madison's attorney that Madison would invoke the Fifth Amendment privilege against self-incrimination if he were *431 called to testify, and that even if granted immunity it was doubtful that he would testify. The trial judge held a pretrial hearing pursuant to R. 3:13-1(b) to determine the admissibility of Madison's statement as substantive evidence at defendant's trial. At that hearing Madison was called by the State and, after being sworn, was questioned concerning the events surrounding the apartment building fire. Madison declined to answer any questions, asserting his Fifth Amendment privilege against self-incrimination. The trial judge found that the privilege was properly asserted and the State thereupon petitioned and obtained an order granting Madison immunity. Madison was then recalled to the stand and questioned concerning the fire. Madison again invoked his Fifth Amendment privilege. The trial judge informed Madison that he had no such privilege and ordered him to answer the questions put to him. Madison refused, continuing to assert his purported Fifth Amendment right to remain silent. The State thereupon offered Madison's statement as a prior inconsistent statement under Evid.R. 63(1)(a).
Following argument, Judge Hamill held that Madison's out-of-court statement was inadmissible. He reasoned, in part, that (1) although Madison's present refusal to answer any questions might be deemed inconsistent with his prior statement, it did not constitute "testimony" within the purview of Evid.R. 63(1)(a), and (2) the use of Madison's statement, coupled with his refusal to answer any questions for whatever reason, would deny defendant his constitutional right to confront witnesses against him. We agree and affirm.
It is elementary that Madison's out-of-court statement is hearsay and therefore is inadmissible in evidence to prove the truth of the matters contained therein unless it falls within one of the exceptions to the hearsay rule set forth in Evid.R. 63(1) through 63(32). Here, the State's theory is that Madison's statement is admissible as a prior inconsistent statement under recently amended Evid.R. 63(1)(a), which now, in part, provides:

*432 A statement is admissible if previously made by a person who is a witness at a hearing, provided it would have been admissible if made by him while testifying and the statement:
(a) Is inconsistent with his testimony at the hearing, is offered in compliance with the requirements of Rule 22(a) and (b); either is in writing signed by the witness under circumstances establishing its reliability or was given under oath subject to the penalty of perjury at a trial, judicial hearing, proceeding before an agency empowered to issue subpoenas, or in a deposition....
Obviously, the issue is whether Madison's refusal to answer any question constitutes "testimony" within the above rule. In our view, it does not. The term "testimony" is not defined by the New Jersey Rules of Evidence (see Evid.R. 1), and therefore the term should be given its plain and ordinary meaning. "Testimony" is generally defined as a particular kind of evidence that comes to a tribunal through live witnesses speaking under oath or affirmation in the presence of a tribunal, judicial or quasi-judicial. Black's Law Dictionary (5 ed. 1979), 1324; Webster's Third New International Dictionary (3 ed. 1971), 2362. See State Hwy. Comm'n v. Lincoln Terminal Corp., 110 N.J.L. 190, 196 (E. & A. 1933); Bednarik v. Bednarik, 18 N.J. Misc. 633, 648-649 (Ch. 1940), overruled on other grounds in Cortese v. Cortese, 10 N.J. Super. 152 (App.Div. 1950); State v. Ricci, 107 R.I. 582, 268 A.2d 692, 697 (Sup.Ct. 1970). See, also, 31 C.J.S., Evidence, § 3 at 819-820. Testimony properly means "only such evidence as is delivered by a witness on the trial of a cause, either orally or in the form of affidavits or depositions." Black's Law Dictionary, supra.
State v. Provet, 133 N.J. Super. 432 (App.Div. 1975), certif. den. 68 N.J. 174 (1975), relied upon by the State to support the admissibility of Madison's statement under Evid.R. 63(1)(a), is clearly distinguishable. There, defendant was convicted of robbing and raping a young student nurse. The victim testified on direct that she had seen defendant during the robbery, but that he had forced her to strip and tied her dress around her head so that she had not seen him during the rape. On cross-examination, however, the victim stated for the first time that during *433 the rape she had tricked defendant into removing the dress, which allowed her to see his face. Furthermore, the incident about the removal of the dress from her head had not been mentioned in the victim's initial statement to the police. The trial judge instructed the jurors that they could find the prior omission of this information to be inconsistent with the witness' later testimony, and if they so found, that such an inconsistency could be considered solely in evaluating the witness' credibility. On appeal, defendant claimed that the trial judge erred in charging the jury that they could consider the omission of the material factual assertion in the statement given to the police by the complaining witness only for the purpose of affecting the credibility of the witness. We agreed with defendant and held that the statement, which omitted a material fact, was properly admissible as substantive proof of the negative proposition that the victim's dress was not removed, and that therefore she could not have observed her assailant during the rape. We concluded that the limiting instructions should not have been given, pointing out that
A statement from which there has been omitted a material assertion that would normally have been made and which is presently testified to may be considered a prior inconsistent statement. State v. Rosa, 71 N.J.L. 316 (E. & A. 1904); Esderts v. Chicago, Rock Island & Pacific R. Co., 76 Ill. App.2d 210, 222 N.E.2d 117 (App.Ct. 1966), cert. den. 386 U.S. 993, 87 S.Ct. 1309, 18 L.Ed.2d 339 (1967); Commonwealth v. West, 312 Mass. 438, 45 N.E.2d 260 (Sup.Jud.Ct. 1942); Erickson v. Erickson & Co., 212 Minn. 119, 2 N.W.2d 824 (Sup.Ct. 1942); 3A Wigmore, supra, § 1042 at 1056; McCormick, supra at 68. While it can be readily understood that a material omission in a prior statement may affect the credibility of a witness, the omission alone cannot logically serve as affirmative proof of a fact asserted. But the prior statement as a whole, because of the omission, may serve as an implied contradiction of the testimony given by the witness. 3A Wigmore, supra. In the case at hand the statement was offered to impeach G.T.'s testimony that her dress was removed from her eyes during the sexual assault. It was offered not simply to attack her credibility but to prove a negative proposition as well, namely, that the dress was not removed and that she could not have observed her assailant during the rape. For this reason the limiting instruction should not have been given. When a prior contradictory statement is introduced pursuant to Evid.R. 63(1)(a) it is now improper to give a limiting instruction unless the statement has been offered for a limited purpose *434 (see Evid.R. 6) or as neutralizing evidence under Evid.R. 20). [133 N.J. Super. at 437-438][1]
Here, unlike Provet, Madison has refused to answer any questions about the crimes which he had detailed in an earlier statement. His complete silence at defendant's trial is not the equivalent of the omission of a material fact which may create an inconsistency between trial testimony and a prior out-of-court statement. Madison's silence, therefore, does not constitute "testimony" within the purview of Evid.R. 63(1)(a); thus the trial judge properly held Madison's prior statement inadmissible.
Even if we were to construe the term "testimony" contained in Evid.R. 63(1)(a) in an overly broad manner and consider Madison's silence at trial the equivalent of testimony, we are firmly convinced that the admissibility of his prior out-of-court statement is barred on constitutional grounds. The Confrontation Clause of the Sixth Amendment provides:
In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the Witnesses against him.... [U.S.Const., Amend. VI]
The Confrontation Clause confers upon the accused the right to confront witnesses, which includes the right to cross-examine them, and this right has been extended to defendants in state prosecutions through the 14th Amendment. This principle was explicitly declared in Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), where the court stated:
It cannot seriously be doubted at this late date that the right of cross-examination is included in the right of an accused in a criminal case to confront the witnesses against him. And probably no one, certainly no one experienced in the trial of lawsuits, would deny the value of cross-examination in exposing falsehood and bringing out the truth in the trial of a criminal case. See, e.g., 5 Wigmore, Evidence § 1367 (3d ed. 1940). The fact that this right appears in the Sixth Amendment of our Bill of Rights reflects the belief of the Framers of those liberties and safeguards that confrontation was a fundamental right *435 essential to a fair trial in a criminal prosecution. Moreover the decisions of this Court and other courts throughout the years have constantly emphasized the necessity for cross-examination as a protection for defendants in criminal cases. This Court in Kirby v. United States, 174 U.S. 47, 55, 56, 43 L.Ed. 890, 893, 894, 19 S.Ct. 574, 577, referred to the right of confrontation as "[o]ne of the fundamental guarantees of life and liberty," and "a right long deemed so essential for the due protection of life and liberty that is guarded against legislative and judicial action by provisions in the Constitution of the United States and in the constitutions of most if not of all the States composing the Union." [380 U.S. at 404, 85 S.Ct. at 1068, 13 L.Ed.2d at 926]
Moreover, in Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), decided the same day as Pointer, the court applied these fundamental principles to a case similar to the one under review. In Douglas petitioner's accomplice, Loyd, had been tried first and found guilty. When the State then called Loyd at petitioner's trial, Loyd refused to testify on the ground of self-incrimination, and although ordered by the judge to answer the Solicitor's questions, he refused to testify to anything but his name and address. With the judge's permission the Solicitor then produced what was supposed to be Loyd's confession which he read several sentences at a time, to "refresh [his] recollection," punctuating the statement with questions like "Did you make that statement?" Petitioner objected to this procedure, contending that his right to confrontation under the 6th Amendment was being abridged. The Alabama courts disagreed.
The Supreme Court reversed, finding that petitioner's rights had been violated and emphasizing that the Confrontation Clause was intended to prevent trial by "depositions or ex parte affidavits." There, petitioner was denied an opportunity to cross-examine Loyd to test his veracity, and the jury was denied the opportunity to observe Loyd's demeanor while testifying. The court's reasoning in reaching this conclusion is worthy of being repeated here:
In the circumstances of this case, petitioner's inability to cross-examine Loyd as to the alleged confession plainly denied him the right of cross-examination secured by the Confrontation Clause. Loyd's alleged statement that the petitioner fired the shotgun constituted the only direct evidence that he had done so; coupled with the description of the circumstances surrounding the shooting, this *436 formed a crucial link in the proof both of petitioner's act and of the requisite intent to murder. Although the Solicitor's reading of Loyd's alleged statement, and Loyd's refusals to answer, were not technically testimony, the Solicitor's reading may well have been the equivalent in the jury's mind of testimony that Loyd in fact made the statement; and Loyd's reliance upon the privilege created a situation in which the jury might improperly infer both that the statement had been made and that it was true. Slochower v. Board of Higher Education, 350 U.S. 551, 557-558, 100 L.Ed. 692, 699, 76 S.Ct. 637 [640-41]; United States v. Maloney, 262 F.2d 535, 537 (CA2d Cir. 1959). Since the Solicitor was not a witness, the inference from his reading that Loyd made the statement could not be tested by cross-examination. Similarly, Loyd could not be cross-examined on a statement imputed to but not admitted by him. Nor was the opportunity to cross-examine the law enforcement officers adequate to redress this denial of the essential right secured by the Confrontation Clause. Indeed, their testimony enhanced the danger that the jury would treat the Solicitor's questioning of Loyd and Loyd's refusal to answer as proving the truth of Loyd's alleged confession. But since their evidence tended to show only that Loyd made the confession, cross-examination of them as to its genuineness could not substitute for cross-examination of Loyd to test the truth of the statement itself. Motes v. United States, 178 U.S. 458, 44 L.Ed. 1150, 20 S.Ct. 993; cf. Kirby v. United States, 174 U.S. 47, 43 L.Ed. 890, 19 S.Ct. 574.
Hence, effective confrontation of Loyd was possible only if Loyd affirmed the statement as his. However, Loyd did not do so, but relied on his privilege to refuse to answer. We need not decide whether Loyd properly invoked the privilege in light of his conviction. It is sufficient for the purposes of deciding petitioner's claim under the Confrontation Clause that no suggestion is made that Loyd's refusal to answer was procured by the petitioner, see Motes v. United States, supra, 178 U.S. at 471, 44 L.Ed. at 1154 [20 S.Ct. at 998]; on this record it appears that Loyd was acting entirely in his own interests in doing so. This case cannot be characterized as one where the prejudice in the denial of the right of cross-examination constituted a mere minor lapse. The alleged statements clearly bore on a fundamental part of the State's case against petitioner. The circumstances are therefore such that "inferences from a witness' refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant." Namet v. United States, 373 U.S. 179, 187, 10 L.Ed.2d 278, 284, 83 S.Ct. 1151 [1157]. See also Fletcher v. United States, 118 App. DC 137, 332 F.2d 724 (1964). [380 U.S. at 419-20, 85 S.Ct. at 1077, 13 L.Ed.2d 937-938]
Subsequent to Pointer and Douglas some courts, such as California, took the position that the Confrontation Clause requires that criminal defendants be afforded an opportunity at trial to cross-examine any individual whose statement is introduced as substantive evidence by the prosecution. See, e.g., People v. Green, 70 Cal.2d 654, 75 Cal. Rptr. 782, 451 P.2d 422 (Sup.Ct. 1969), rev'd California v. Green, 399 U.S. 149, 90 S.Ct. *437 1930, 26 L.Ed.2d 489 (1970); People v. Johnson, 68 Cal.2d 646, 68 Cal. Rptr. 599, 441 P.2d 111 (Sup.Ct. 1968), cert. den. 393 U.S. 1051, 89 S.Ct. 679, 21 L.Ed.2d 693 (1969). The Supreme Court decisions in California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), and Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), however, have made it clear that the scope of the constitutional right to confrontation confers no such absolute right.
Examining Green and Roberts, guidelines may be gleaned as to what procedures "`substantial[ly] compl[y] with the purposes behind the confrontation requirement.'" Roberts, supra, 448 U.S. at 69, 100 S.Ct. at 2540, 65 L.Ed.2d at 610 (quoting Green). First, the ability to cross-examine a witness at trial about his prior statement satisfies the Confrontation Clause. Roberts, supra, 448 U.S. at 69, 100 S.Ct. at 2540, n. 10, 65 L.Ed.2d at 610, n. 10; Green, supra, 399 U.S. at 159-64, 90 S.Ct. at 1935-38, 26 L.Ed.2d at 496-501. Second, an adequate opportunity for a defendant to cross-examine the declarant at the time the prior statement was given normally complies with the constitutional mandate. Roberts, supra, 448 U.S. at 69, 100 S.Ct. at 2540 and n. 10, 65 L.Ed.2d at 609-611 and n. 10; Green, supra, 399 U.S. at 165-70, 90 S.Ct. at 1938-41, 26 L.Ed.2d at 501-504. And, finally, although no actual confrontation occurs, statements exhibiting sufficient "indicia of reliability," such as a dying declaration, will not be found violative of the Confrontation Clause. Roberts, supra, 448 U.S. at 66, 100 S.Ct. at 2539, 65 L.Ed.2d at 607-608; Green, supra, 399 U.S. at 165-67 and n. 16, 90 S.Ct. at 1938-39 and n. 16, 26 L.Ed.2d at 501-502 and n. 16. These later decisions concerning the constitutional requirement of confrontation, however, have not undermined the fundamental holding in Douglas where defendant was never afforded an opportunity to cross-examine the declarant, nor was the prior statement clothed with special indicia of reliability. Douglas, supra, 380 U.S. at 416-20, 85 S.Ct. at 1075-77, 13 L.Ed.2d at 935-938. See Roberts, supra, 448 U.S. at 66, 100 S.Ct. at 2539, *438 65 L.Ed.2d at 607-608; Green, supra, 399 U.S. at 165-67, 90 S.Ct. at 1938-39, 26 L.Ed.2d at 501-502.
Consequently, we hold that Douglas is controlling here, and that applying the guidelines discussed in Green and Roberts it is clear that Madison's statement does not have sufficient "indicia of reliability" to satisfy the concept underlying the constitutional right to confrontation. The statement was not subject to cross-examination when given by Madison. Moreover, defendant will not have an opportunity to cross-examine Madison at trial about the statement because Madison has refused, albeit without legal justification, to answer any questions put to him. Thus, the Confrontation Clause bars the admission of Madison's statement into evidence at defendant's trial.
Accordingly, the evidentiary ruling of the trial court under review is affirmed.
NOTES
[1] At the time Provet was decided, a prior inconsistent statement could be introduced for substantive purposes only by the party who had not called the witness. Under Evid.R. 63(1)(a) as it presently reads, either party may introduce a prior inconsistent statement for substantive purposes.