217 N.J. Super. 72 (1987)
524 A.2d 1291
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CURTIS BRYANT, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted March 18, 1987.
Decided April 24, 1987.
*73 Before Judges FURMAN, DREIER and SHEBELL.
Alfred A. Slocum, Public Defender, Attorney for appellant (Robert M. Schaaf, Designated Counsel, of counsel and on the brief).
*74 W. Cary Edwards, Attorney General of New Jersey, Attorney for respondent (Jane F. Tong, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Defendant appeals after a bench trial from a conviction of three counts of first degree robbery (N.J.S.A. 2C:15-1); two counts of second degree robbery (N.J.S.A. 2C:15-1), and two counts of kidnapping (N.J.S.A. 2C:13-1), contained within a 25 count indictment growing out of five separate events during a two and one-half month period between June 5 and August 25, 1982. The indictments concerning the last of these five incidents, the 21st through the 25th counts (regarding the burglary/theft/kidnapping offenses committed against Bertha Steussey) were severed and tried separately prior to the trial of the case before us. Defendant was there convicted by a jury and sentenced to a term of 30 years with a 15-year parole disqualifier. That conviction is the subject of a separate appeal pending before this court.
After defendant was convicted of the three counts of first degree robbery and four counts of second degree robbery growing out of the four remaining incidents, the trial judge merged into these convictions for the purpose of sentencing the remaining counts of which he was convicted, namely, four counts of second degree burglary, N.J.S.A. 2C:18-2; one count of conspiracy to commit burglary, N.J.S.A. 2C:5-2; two additional robbery counts of the same victims on alternative theories; and two downgraded assault convictions. The judge further convicted defendant of two of the three remaining kidnapping counts, N.J.S.A. 2C:13-1, and a third kidnapping count downgraded to criminal restraint. He imposed consecutive 15-year terms with five year parole disqualifiers on each of the three first degree robbery counts, a 20-year term with a 10-year parole disqualifier to run consecutively to the robbery *75 terms for one of the kidnapping counts, and a similar concurrent term for the other. Concurrent seven-year terms were imposed for the two second degree robberies. The aggregate sentence was 65 years with a 25-year period of parole ineligibility, consecutive to the sentence already imposed for the Stuessey incident. Defendant thus faces a total imprisonment after the two trials arising from this indictment of 95 years with a 40-year parole disqualifier. The sentence was imposed prior to the decisions of the Supreme Court in State v. Yarbough, 100 N.J. 627, 644 (1985), cert. den. sub. nom. Yarbough v. New Jersey, ___ U.S. ___, 106 S.Ct. 1193, 89 L.Ed.2d 308 (1986), and State v. Kruse, 105 N.J. 354 (1987). At the time of these crimes defendant was 24 years old and had no criminal or juvenile record.
The four incidents pertaining to this appeal followed a similar pattern. After surveilling the premises to determine the habits of the occupants, three or four individuals forceably entered premises occupied by one or two elderly residents, overpowered them by physical force and the use of a gun, and then burglarized the house. In two of the incidents the victims were bound and gagged during the commission of the crime and then left in that state by the fleeing robbers. One of the victims was able to free himself 10 minutes after the robbers left; neither of the other confined victims indicated his or her length of confinement nor their mental state. The victims were unable to identify defendant, and, in fact, did not testify, based upon a stipulation by defendant that the victims' statements could be entered in evidence in lieu of their appearances.
The only evidence identifying defendant as one of the robbers were earlier statements of a codefendant, Michael James. James and Anthony Dobson had entered retraxit pleas concerning the Steussey incident in return for a grant of immunity under which they were to implicate defendant in the other four incidents. Dobson later refused to testify even after a grant of immunity.
*76 When James was called as a witness for the State he claimed to be unable to recall the incidents themselves, or to recall whether the earlier statements had been truthful when made or even the fact of making them. He did, however, remember appearing before the judge when he made his retraxit statements. His response to almost every question concerning the earlier statements when they were used for impeachment purposes was "I may have [made the statement]. I don't recall ...," or the like. James' earlier statements implicated defendant in each of the criminal incidents and were corroborated in all respects other than the identification of defendant by the victims' statements. Although afforded the opportunity to cross-examine James, defendant initially declined. The trial judge specifically found that James' lapse of memory was "not genuine" and ruled that his testimony was "admissible as substantive evidence," citing federal and other out-of-state authority.[1] Defendant then recalled James for cross-examination. The witness expressed his belief that "these questions will affect the outcome of my appeal," and again indicated a general failure to recollect various facts and events.
Defendant has raised six points on this appeal.
POINT I
The trial court violated Evid.R. 63(1)(a) by admitting Michael James' prior statements into evidence.
POINT II
The trial court violated defendant's right to confront the witnesses against him by admitting Michael James' prior statements into evidence.
POINT III
The trial court violated Rule 3:18-1 and defendant's right to due process of law by denying defendant's motions for judgments acquitting him of all of the charges in the indictment.

*77 POINT IV
The trial court committed reversible error by denying defendant's motion to dismiss the indictment for failure to accord him a speedy trial.
POINT V
Defendant was entitled to judgments acquitting him of the two convictions of Kidnapping as a matter of law (Not Raised Below).
POINT VI
The trial judge abused his discretion by sentencing defendant to consecutive sentences aggregating 95 years of imprisonment.
We will consolidate our discussion of defendant's points I and II and also of points III and V.

A.
Defendant attacks the admission of James' statement on both hearsay and confrontation grounds. The State supports the admissibility of the statement under Evid.R. 63(1)(a) and the holding of State v. Burgos, 200 N.J. Super. 6, 10-12 (App. Div.), certif. den. 101 N.J. 304 (1985). We agree with the arguments urged by the State. We considered this matter most recently in Burgos where we determined that Evid.R. 63(1)(a) permitted the admission of a prior signed statement given to the police. There, the witness, suffering from subchronic schizophrenic paranoia, stated at trial that he could not remember speaking with anyone at police headquarters, although he acknowledged his signature on each page of the police statement. In Burgos we held that the witness's limited statements at trial constituted "testimony at the hearing" contrary to the prior statement, within the meaning of Evid.R. 63(1)(a). 200 N.J. Super. at 11-12.
The case before us, although containing the same issue of lack of recollection of the prior statement at trial, presents a witness who, rather than testifying with respect to the actual event to the contrary of the proffered statement (as in Burgos), asserts that he has no recollection of the incident described in this statement. Compare State v. Williams, 182 N.J. Super. 427, 432-434 (App.Div. 1982), where a witness's silence on the witness stand was found not to "constitute `testimony' *78 within the purview of Evid.R. 63(1)(a)." Id. at 434. We there held the prior statement to be inadmissible under both the Evidence Rule and the Confrontation Clause of the Sixth Amendment of the United States Constitution. Id. at 434-438.
While there are certain similarities between the case before us and State v. Williams, the judge here was able to combine his functions to make a preliminary determination of admissibility under Evid.R. 8(2) and then to making findings of fact. On closer examination it can readily be seen that this case falls within the principles established in State v. Burgos rather than those of State v. Williams. After observing the witness, who acknowledged signing the prior written statements, the trial judge determined that James' lack of recollection was "not genuine." Thus, the witness's protestations were no different than his making contrary statements which would have justified the use of the prior testimony under the State v. Burgos rationale. The trial judge was within his discretion in determining whether this testimony was "inconsistent" with the prior statement. Inconsistency is not restricted "to diametrically opposed answers but may be found in evasive answers, inability to recall, silence or changes in position." United States v. Dennis, 625 F.2d 782, 795 (8th Cir.1980). The use of such a statement in a context where a witness lies concerning his recollection of the event and his making the statement does no violence to the avowed purpose of admissibility codified in Evid.R. 63(1)(a). See Current N.J. Rules of Evidence, Comment 1 to Evid.R. 63(1) (1987), recounting the history of the rule.
The specific confrontation clause objection, sustained in State v. Williams, supra, but rejected in State v. Burgos, supra, remains unanswered by both the United States Supreme Court and the New Jersey Supreme Court. See California v. Green, 399 U.S. 149, 168-169, n. 18, 90 S.Ct. 1930, 1940-1941, 26 L.Ed.2d 489, 503 (1970), written before the adoption of the Federal Evidence Rules. Although here, the witness explained his lack of response by indicating some concern that his answers might *79 affect his appeal, an evident purpose of his unresponsive answers was also the protection of defendant. On these facts we adhere to our previous position expressed in State v. Burgos, supra, 200 N.J. Super. at 12.
These conclusions are in accordance with the principles established in McCormick, as to both the general admissibility of a prior inconsistent statement when faced with a false assertion of lack of memory, see McCormick, Evidence, § 251 at 746-745 3d Ed. (1984), and as to the Confrontation Clause issue, Id. at 748. And see United States v. DiCaro, 772 F.2d 1314 (7th Cir.1985), cert. den. ___ U.S. ___, 106 S.Ct. 1458, 89 L.Ed.2d 716 (1986); United States v. Rogers, 549 F.2d 490 (8th Cir.1976), cert. den. 431 U.S. 918, 97 S.Ct. 2182, 53 L.Ed.2d 229 (1977); United States v. Payne, 492 F.2d 449, 452 (4th Cir.1974), cert. den. 419 U.S. 876, 95 S.Ct. 138, 42 L.Ed.2d 115 (1974), as well as cases pro and con cited in footnote 1, supra. But see 4 Weinstein, Federal Rules of Evidence, at 801-132, recommending the statement under the analogous Fed.Evid.R. 801(d)(1)(A) where a witness persists in claiming non-recollection. We note that there are many cases favoring and many opposing the position we have adopted. See Annotation, "Use or admissibility of prior inconsistent statements of witnesses as substantive evidence of facts to which they relate in criminal cases  modern state cases," 30 A.L.R.4th 414 (1984), and Annotation, "Denial of recollection as inconsistent with prior statements so as to render statement admissible," 99 A.L.R.3d 934 (1980 and 1986 supp.). As noted by McCormick, if a judge determines that the assertion of lack of memory of the event is untrue, the statement on the witness stand is at least "in effect an implied denial of the prior statement, thus qualifying it as inconsistent and nonhearsay." McCormick, Evidence, § 251 at 747; see also United States v. Dennis, supra, 625 F.2d at 795. With this explicit finding in the case before us, we find no error in admitting James' statement.

*80 B.
We next consider whether the kidnapping convictions can be sustained on the evidence presented. The relevant provisions of the kidnapping statute, N.J.S.A. 2C:13-1, provide:
b. Holding for other purposes [than for ransom, reward or as a hostage]. A person is guilty of kidnapping ... if he unlawfully confines another for a substantial period, with any of the following purposes:
(1) To facilitate commission of any crime or flight thereafter;
(2) To inflict bodily injury on or to terrorize the victim or another....
[Emphasis added].
During the robbery of Mary Marles on July 28, 1982, the perpetrators placed the victim in her closet. The victim left the closet when she heard the robber's car door slam shut. For this act, defendant was convicted of criminal restraint. On August 16, 1982 during the Shinn robbery, Mr. Shinn was confined to his bathroom, bound with an electrical extension cord and gagged with a sock. He was able to free himself approximately 10 minutes after the robbers left. During the August 16, 1982 robbery of Mr. Buntin and Ms. Hardin, the victims were gagged and tied in their respective bedrooms, with Mr. Buntin then taken to Ms. Hardin's bedroom and the two victims left bound and gagged on the floor. There was no evidence of how long it took the victims to free themselves after the robbers left.
In a case interpreting a related provision of the kidnapping section, N.J.S.A. 2C:13-1b, declaring unlawful the removal of another for "a substantial distance from the vicinity where he is found," the New Jersey Supreme Court observed that "the legislature realized that the risk of harm attendant upon isolation is the principal danger of the crime." State v. Masino, 94 N.J. 436, 446 (1983). In State v. Smith, 210 N.J. Super. 43, 61 (App.Div. 1986), this court determined that the same rationale applies to the parallel "substantial period" requirement.
... [I]n our view the rationale for [the Masino] holding applies to the `substantial period' language as well where the kidnapping is alleged as incident to another crime. The `heart' of N.J.S.A. 2C:13-1b is the `isolation and increased risk of harm' to the victim. Masino, supra, 94 N.J. at 447. Thus, the *81 Court mandated that in the future trial judges should instruct juries `in terms of sufficient criminal significance that is more than incidental to the underlying crime and that substantially increases the risk of harm to the victim.' Ibid. We conclude that the same rationale applies to the confinement provisions and that the same instruction must be given with regard to confinement for a `substantial period.' [210 N.J. Super. at 60-61].
In the case before us elderly victims were bound and gagged for a period sufficient to permit the ransacking of their houses and remained in that condition for 10 minutes in one case and for an unspecified period in another. Under Masino and Smith our inquiry must be whether there was an enhanced risk of harm resulting from this period of confinement. We must thus look at whether the nature of the confinement and the duration of the victims' isolation made them more vulnerable to harm beyond that created by the robbery itself. In each of the robberies the victims were hit, threatened and generally terrorized as a means to have them reveal the location of valuables within their homes. Insofar as the victims were restrained during the robbery itself, we cannot say that they were rendered more vulnerable to harm beyond that imposed by the robberies for which defendant has been separately charged and punished.[2]
The same is not true as to their confinement to facilitate defendant's flight from the premises, in that it increased the risk to these victims. Once the robbers had left, there would be nobody to help the bound and gagged elderly victims if they were unable to breathe or suffered a heart attack. Had the victims been unable to free themselves for an extended period of time, as defendants obviously intended, there was a significant possibility of additional discomfort, physical injury or even death. The determination, therefore, by the trial judge that leaving the elderly victims bound and gagged constituted kidnapping within the meaning of N.J.S.A. 2C:13-1b is supported by the evidence and the reasonable inferences therefrom. *82 State v. Reyes, 50 N.J. 454, 459 (1967). It is fair to say that within the standards of Masino and Smith the restraints were more than "incidental to the underlying crime." This conclusion is supported by the comment to Model Penal Code § 212.1, 10 U.L.A. 539, 540 (1974 and 1986 supp.):
Section 212.1 also defines kidnapping to include unlawful confinement of another `for a substantial period in a place of isolation.' ... It covers cases where the victim is held in the place where he is found for a substantial period of time.... Conceivably, one's own apartment in a city might be regarded as a `place of isolation,' if the circumstances of detention made discovery or rescue unlikely. The essential concept is not geographical location but rather effective isolation from the usual protections of society. Again, the statute imposes a substantiality requirement in order to preclude kidnapping liability for detentions merely incidental to rape and other crimes of violence. [American Law Institute, Model Penal Code and Commentaries 224 (1980)].
Cf. Commonwealth v. Hughes, 264 Pa.Super. 118, 399 A.2d 694 (1979).
We note that the trial judge convicted defendant of kidnapping for both the Shinn and the Buntin and Hardin incidents, although only in the Shinn incident was there a specific period of time proven. We find this element to be immaterial under the facts of this case. The intent implied by the binding and gagging of the elderly victims was clearly that they be restrained for some substantial period to facilitate the robbers' flight from the scene. While the circumstances might occasion a greater or lesser punishment,[3] and although we must remand this matter for resentencing for the kidnapping as well as the other crimes, we reject defendant's arguments that the convictions themselves must be vacated.

C.
As to defendant's point IV, we find no substantial merit in his argument. Although there was a 20-month delay between defendant's initial arrest in August, 1982 and his final *83 conviction in May, 1984, the State was not shown to have initially possessed sufficient evidence to convict defendant for other than receiving stolen goods. Five months after he was indicted for the series of crimes described above, defendant filed a motion demanding a speedy trial.[4] The State was prepared to proceed to trial on the current charges a mere 18 days after the filing of defendant's motion. Applying the balancing test of Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101, 116 (1972), adopted in State v. Szima, 70 N.J. 196, 200-202, cert. den. 429 U.S. 896, 97 S.Ct. 259, 50 L.Ed.2d 180 (1976), we find no basis to overturn the denial of defendant's motion to dismiss the matter for delay in prosecution. The length of the delay in this case, the reasons for the delay, the time of defendant's assertion of his rights and possible prejudice to defendant were properly weighed and considered by the trial judge.

D.
Defendant's last point concerns the sentences imposed which, as noted earlier, aggregated 65 years with a 25-year period of parole ineligibility consecutive to the separate sentence of 30 years with a 15-year parole ineligibility imposed for his earlier conviction on the fifth of this series of crimes. In State v. Yarbough, supra, decided 16 months after the conclusion of this trial, the Supreme Court imposed sentencing standards to "govern courts in determining whether sentences for multiple offenses are to be served consecutively or concurrently[,]" and in recognition of the Criminal Code's sentencing goals "that punishment fit the crime, not the criminal, and that *84 there be a predictable degree of uniformity in sentencing." 100 N.J. at 630. The Court established the following criteria:
(1) there can be no free crimes in a system for which the punishment shall fit the crime;
(2) the reasons for imposing either a consecutive or concurrent sentence should be separately stated in the sentencing decisions;
(3) some reasons to be considered by the sentencing court should include facts relating to the crimes, including whether or not:
(a) the crimes and their objectives were predominantly independent of each other;
(b) the crimes involved separate acts of violence or threats of violence;
(c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;
(d) any of the crimes involved multiple victims;
(e) the convictions for which the sentences are to be imposed are numerous;
(4) there should be no double counting of aggravating factors;
(5) successive terms for the same offenses should not ordinarily be equal to the punishment for the first offense; and
(6) there should be an overall outer limit on the cumulation of consecutive sentences for multiple offenses not to exceed the sum of the longest terms (including an extended term, if eligible) that could be imposed for the two most serious offenses. [Id. at 643-644 (footnotes omitted)].
In State v. Kruse, 105 N.J. 354 (1987), the Court imposed similar requirements for giving the explicit reasons for any periods of parole ineligibility. 105 N.J. at 360. See also State v. Martelli, 201 N.J. Super. 378, 385 (App.Div. 1985).
In this case the trial judge sentenced defendant to the presumptive terms for the three first degree robbery convictions, N.J.S.A. 2C:44-1f, but also sentenced defendant to the less than maximum period of parole ineligibility that could be attached to these presumptive terms. Similarly, although there is no presumptive kidnapping sentence, see N.J.S.A. 2C:44-1f(1), (the permissible range is between 15 and 30 years, N.J.S.A. 2C:13-1c), the 20-year sentences imposed here were at the lower third of the range; yet one of them was accompanied by a period of parole ineligibility.
As noted earlier, these sentences all were made consecutive to the sentences imposed for the fifth incident so that as a result of this two and one-half month, five-incident series of *85 criminal episodes defendant will remain in jail for a minimum of 40 years, until he is in his mid-60's. We acknowledge that State v. Yarbough recognizes that "there are cases so extreme and so extraordinary that deviation from the guidelines may be called for," 100 N.J. at 647. Consequently, we will not impose upon the trial judge the absolute requirement that the resentencing be limited to the maximum for the two greatest offenses, i.e., 60 years with a 30-year parole ineligibility allocated among the various crimes. Also, State v. Yarbough by its terms is limited to those sentences "pronounced on one occasion to an offender who has engaged in a pattern of behavior constituting a series of separate offenses or [who] committed multiple offenses in separate, unrelated episodes." 100 N.J. at 644. There is, therefore, a question as to whether the fifth incident although contained in the same indictment, but not simultaneously disposed of would be encompassed by the Yarbough limitations. These sentencing issues should be considered and resolved by the trial judge on remand.
The convictions appealed from are affirmed. The sentences imposed are vacated, and this matter is remanded to the Law Division for the purpose of resentencing.
NOTES
[1] The trial judge cites 10 cases treating the problem. Compare, e.g., United States v. Russell, 712 F.2d 1256, 1258 (8th Cir.1983), and United States v. Thompson, 708 F.2d 1294 (8th Cir.1983) (where witness admitted making the prior statement), both upholding admissibility, with United States v. Palumbo, 639 F.2d 123, 128 n. 6 (3rd Cir.), cert. den. 454 U.S. 819, 102 S.Ct. 100, 70 L.Ed.2d 90 (1981), and United States v. Orrico, 599 F.2d 113 (6th Cir.1979), both denying admissibility.
[2] Their treatment in the course of the robbery has impact upon sentencing. See N.J.S.A. 2C:44-1a(1) and (2).
[3] We note that the Shinn kidnapping resulted in a consecutive sentence while defendant was given an concurrent sentence for the Hardin and Buntin kidnapping.
[4] Defendant was initially arrested on August 26, 1982 in relation to the Steussey incident and indicted therefor. After the retraxit pleas with accompanying statements by the codefendants implicating defendant in August 1983, the indictment in the present case was issued incorporating and superseding the prior indictment. Defendant was rearrested on the current charges after a six-week period from June to August of 1983 during which defendant was released.