679 A.2d 1127

**Jerry S. TYLER**

**v.**

**STATE of Maryland.**

**No. 108, Sept. Term, 1995.**

Court of Appeals of Maryland.

July 30, 1996.

George E. Burns, Jr., Assistant Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for Petitioner.

Annabelle L. Lisic, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on brief), Baltimore, for Respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

CHASANOW, Judge.

This case presents the question of whether in a criminal trial the State may introduce, as a "prior inconsistent statement," the prior testimony of a witness who takes the stand but refuses to testify. We hold that the prior testimony was not admissible as a prior inconsistent statement in this case because a refusal to testify is not "inconsistent" with prior testimony. Hence, the prior testimony was inadmissible hearsay evidence not within any exception. We reverse Petitioner's conviction and remand for a new trial.

## I.

Jerry S. Tyler, Petitioner, was charged with first degree murder and related offenses stemming from the shooting death of James "Jay" S. Bias, III. Bias was shot and killed in the parking lot of the Prince George's Plaza Mall on December 4, 1990. According to testimony, Bias and Tyler got into a dispute inside the mall, apparently because Tyler believed that Bias was romantically involved with Tyler's wife. After the argument, Bias and two friends left the mall. As Bias and his friends were driving from the mall parking lot in a Toyota truck, a green Mercedes came speeding across the parking lot

and pulled up alongside the truck at a stop sign. The green Mercedes was driven by Gerald Eiland. Tyler was in the passenger's seat.

Andre Campbell, who was riding in the Toyota with Bias, testified that after the Mercedes pulled up next to the truck, he saw Tyler point at Bias and then "reach[ ] down towards his leg on the right side...." Campbell stated "as I saw him reaching, I [thought] he had a gun" but that "[b]efore I could get the word gun out ... the shooting began." A total of eight shots hit the truck, two of them hitting Bias. Bias was rushed to the hospital, but died of the gunshot wounds. Although he testified at trial that he never actually saw the gun, on the day of the shooting Campbell identified Tyler as the shooter from a police photo array. Campbell's photo identification of Tyler was admitted into evidence.

This case is before us for the second time. In their first trial in the Circuit Court for Prince George's County, Tyler and Eiland were tried together as co-defendants. Tyler was convicted of first degree murder and use of a handgun in the commission of a felony, and Eiland was convicted of second degree murder and use of a handgun in the commission of a felony. After affirmance in the Court of Special Appeals, this Court reversed the convictions of both Tyler and Eiland because of the State's use of peremptory challenges at trial to exclude women from the jury based solely on their gender.[1] *Tyler v. State*, 330 Md. 261, 623 A.2d 648 (1993).

On remand, Tyler and Eiland succeeded in having their cases severed.[2] Eiland was tried first. At his trial, Eiland

---

**1.** Less than a year after we decided *Tyler v. State*, 330 Md. 261, 623 A.2d 648 (1993), the Supreme Court similarly held that gender-based use of peremptory challenges was impermissible. *J.E.B. v. Alabama Ex Rel. T.B.*, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994).

**2.** The Court of Special Appeals pointed out in its opinion that Eiland and Tyler probably did not qualify for a trial severance. *Tyler v. State*, 105 Md.App. 495, 504–05, 660 A.2d 986, 990–91 (1995). The intermediate appellate court had expressly held in Eiland and Tyler's first appeal that the trial judge had not erred in denying Eiland and Tyler's motion for severance, *Eiland v. State*, 92 Md.App. 56, 72–79, 607 A.2d

took the witness stand and blamed the entire shooting on Tyler. Eiland testified that he had no idea that Tyler intended to shoot Bias. He stated that he was driving out of the mall parking lot when he noticed the Toyota truck at a stop sign. Suddenly, Tyler noticed that Bias was in the truck and he started yelling out the window. Eiland testified that Tyler leaned over the driver's seat and "[n]ext thing I know he just started shooting out the window." The jury acquitted Eiland.

Predictably, at Tyler's second trial, Tyler took the stand and blamed the shooting entirely on Eiland. He testified that it was Eiland who had fired the shots at the Toyota. Tyler stated that he was seated in the passenger seat of the Mercedes as it was stopped next to the truck. He testified that he was "having a few words" with Bias and the others in the

42, 50–54 (1992), and we did not disturb this holding in our opinion overturning the convictions, *Tyler v. State,* 330 Md. 261, 271, 623 A.2d 648, 653 (1993). Nonetheless, a severance was granted before Eiland and Tyler were retried.

The effect of granting the severance was forcefully explained by Judge Moylan in Tyler's second appeal:

"Notwithstanding the seal of approval that we had placed on the denial of severance, Eiland and Tyler, on their second try, succeeded ... in having their trials severed. The ground was thereby laid for each to point the finger at the other, not simply through the mouths of counsel but from the witness stand without fear of contradiction by the other."

*Tyler,* 105 Md.App. at 505, 660 A.2d at 991.

The Supreme Court has indicated that, in the federal courts, two or more defendants may be charged together if " 'they are alleged to have participated in the same act or transaction ... constituting an offense....' " *Zafiro v. United States,* 506 U.S. 534, 537, 113 S.Ct. 933, 937, 122 L.Ed.2d 317, 324 (1993)(quoting FED. R.CRIM. P. 8(b)). The Court explained:

"There is a preference in the federal system for joint trials of defendants who are indicted together. Joint trials 'play a vital role in the criminal justice system.' They promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.' For these reasons we repeatedly have approved of joint trials." (Citations omitted).

*Zafiro,* 506 U.S. at 537, 113 S.Ct. at 937, 122 L.Ed.2d at 324. *Cf. Zafiro,* 506 U.S. at 541–45, 113 S.Ct. at 939–41, 122 L.Ed.2d at 327–29 (Stevens, J., concurring)(refraining from adopting a general preference for joint trials).

truck, when suddenly and unexpectedly Eiland fired the shots out the window.

Before Tyler's trial, the State subpoenaed Eiland to appear as a witness at Tyler's trial. Eiland moved to quash the subpoena on the ground that compelling him to testify would violate his Fifth Amendment privilege against self-incrimination. After hearing argument, the trial judge ruled that, given his acquittal, Eiland was in no danger of incriminating himself, and therefore he could be compelled to appear. After the court's ruling, counsel for Eiland informed the court that Eiland might still refuse to testify because some threatening conduct had been directed at him the day before by some unknown person in a brown car. Counsel explained that Eiland felt "that his safety cannot be guaranteed and that he is in great danger if he testifies in this case" and that he may "take the position that he is unable to answer questions put to him by either side."

At Tyler's trial, the State called Eiland as a witness. After giving his name and address, he gave the following testimony:

"[STATE'S ATTORNEY]: Mr. Eiland, did you shoot Jay Bias?

[EILAND]: I can't answer that question.

* * * * * *

[STATE'S ATTORNEY]: Mr. Eiland, are you the same Mr. Eiland that testified in a previous proceeding?

[EILAND]: I can't answer that question.

[STATE'S ATTORNEY]: Your Honor, I would ask the Court to direct the witness to answer the question.

THE COURT: Mr. Eiland, I'm going to order you to answer the questions that have been directed to you. . . .

[EILAND]: I can't answer that question.

[STATE'S ATTORNEY]: Mr. Eiland, did you shoot Jay Bias?

[EILAND]: I can't answer that question.

[STATE'S ATTORNEY]: Why can't you answer that question?

[EILAND]: I can't.

[STATE'S ATTORNEY]: Were you in the car when Jay Bias was shot?

[EILAND]: I can't answer that question.

\* \* \* \* \* \*

[STATE'S ATTORNEY]: Were you in the Prince George's Mall on December 4, 1990?

[EILAND]: I can't answer that question.

[STATE'S ATTORNEY]: And why can't you answer that question?

[EILAND]: Because, I can't.

[STATE'S ATTORNEY]: Were you driving a green Mercedes that was occupied with Jerry Tyler at the Prince George's Mall on December 4th, 1990?

[EILAND]: I can't answer that question.

\* \* \* \* \* \*

[STATE'S ATTORNEY]: Your Honor, at this time I would request the Court to direct the witness that he must answer the questions.

THE COURT: Mr. Eiland, you understood the questions?

[EILAND]: Yes.

THE COURT: You understood that you have previously testified under oath in this courthouse concerning the issues and the facts to which the questions the State has asked are directed. Do you understand that?

[EILAND]: Yes.

THE COURT: Is there some reason that you want to articulate or express as to why you do not want to answer those questions?

[EILAND]: I can't answer that question."

Despite a second order from the court to answer the questions put to him by the State, Eiland refused to answer. After questioning Eiland about his ability to understand the questions, and procuring additional information regarding the incident with the brown car that apparently frightened Eiland, the trial judge found Eiland in contempt of court. The trial

was then recessed for eighteen days and Eiland was jailed. When recalled as a witness eighteen days later, Eiland again refused to answer questions concerning the events the day of the shooting.

Because of Eiland's refusal to testify, the State sought to admit as evidence the transcript of Eiland's testimony from his own trial, in which he had testified that Tyler shot Bias. Tyler objected to the admission of the prior testimony on the ground that it was hearsay, and that it did not fall within any exception to the hearsay rule. After hearing argument, the trial judge ruled that Eiland's prior testimony incriminating Tyler was admissible under the "former testimony" exception to the hearsay rule, and a transcript of the testimony was read to the jury. Tyler was convicted of first degree murder and use of a handgun and sentenced to imprisonment for life for the murder conviction, and 20 years for the handgun conviction.

Tyler appealed to the Court of Special Appeals, arguing, among other things, that the trial judge erred in admitting Eiland's prior testimony at trial. A divided intermediate appellate court concluded that the trial judge had not erred in admitting the prior testimony, and affirmed Tyler's conviction. *Tyler v. State*, 105 Md.App. 495, 660 A.2d 986 (1995). We granted certiorari to consider Tyler's contention that Eiland's prior testimony was improperly admitted.

## II.

There is no question that Eiland's prior testimony was hearsay. It was a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *Ali v. State*, 314 Md. 295, 304, 550 A.2d 925, 929 (1988)(footnote omitted).[3] Hence, the question before us is whether the

---

**3.** Maryland Rule 5–801(c) provides the same definition of hearsay. The Maryland Rules of Evidence, including Md. Rule 5–801(c), however, took effect July 1, 1994 and hence were not in effect at the time of the

testimony was admissible under an exception to the general rule barring the admission of hearsay evidence.

## A.

We agree with Tyler and with the Court of Special Appeals that Eiland's prior testimony was not admissible under the "former testimony" exception to the hearsay rule. In fact, the State concedes this point in its brief. As this Court made clear in *Huffington v. State*, 304 Md. 559, 500 A.2d 272 (1985), *recon. denied*, 305 Md. 306, 503 A.2d 1326, *cert. denied*, 478 U.S. 1023, 106 S.Ct. 3315, 92 L.Ed.2d 745 (1986), the former testimony exception applies in a criminal trial only when (1) the witness has given testimony under oath; (2) the witness who gave the prior testimony is unavailable to testify; and (3) the accused had an opportunity to cross-examine the witness at the prior trial or hearing where the testimony was elicited. 304 Md. at 566, 500 A.2d at 275. *See also Grandison v. State*, 305 Md. 685, 744, 506 A.2d 580, 609, *cert. denied*, 479 U.S. 873, 107 S.Ct. 38, 93 L.Ed.2d 174 (1986). The purpose of the cross-examination requirement is to protect the accused's constitutional rights under the Confrontation Clause of the Sixth Amendment.[4] *See Huffington*, 304 Md. at 566–67, 500 A.2d at 275–76.

---

shooting in this case. Our holding in the instant case would be the same under the rules.

4. In a civil case, there is no need to protect the defendant's right of confrontation. Hence, in a civil action, prior testimony may be admissible if either the party against whom the former testimony is offered *or a predecessor in interest* had an opportunity and similar motive to develop the testimony at the time it was originally given.

The former testimony exception is now codified in Md. Rule 5–804(b)(1), which provides:

"**(b) Hearsay Exceptions.**—The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) *Former Testimony.*—Testimony given as a witness in any action or proceeding or in a deposition taken in compliance with law in the course of any action or proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross or redirect examination."

Our holding in the instant case would be the same under this rule.

In the instant case, the trial judge properly concluded that Eiland was "unavailable" because he refused to testify. *See Simmons v. State,* 333 Md. 547, 559, 636 A.2d 463, 469 (witness who refused to testify was "unavailable" for purposes of hearsay exception), *cert. denied,* —— U.S. ——, 115 S.Ct. 70, 130 L.Ed.2d 26 (1994). The Court of Special Appeals and the State recognized, however, that Eiland's testimony was not admissible as former testimony in Tyler's criminal trial because Tyler had no opportunity to cross-examine Eiland when the prior testimony was elicited at Eiland's separate trial in 1993. Thus, the 1993 testimony did not fall within the former testimony exception.

### B.

The Court of Special Appeals held that Eiland's testimony was admissible as a prior inconsistent statement under the holding of *Nance v. State,* 331 Md. 549, 629 A.2d 633 (1993). In *Nance,* we held that a witness's prior testimony is admissible as substantive evidence when the prior testimony is *inconsistent* with the witness's in-court testimony, and the witness is subject to cross-examination concerning the statement at the trial where the statement is admitted. *Nance,* 331 Md. at 570–71, 629 A.2d at 643–44. This holding has since been codified in Maryland Rule 5–802.1, which provides in pertinent part:

> "The following statements previously made by a witness who testifies at the trial or hearing and who is subject to cross-examination concerning the statement are not excluded by the hearsay rule:

> (a) A statement that is inconsistent with the declarant's testimony, if the statement was (1) given under oath subject to the penalty of perjury at a trial, hearing or other proceeding or in a deposition; (2) reduced to writing and signed by the declarant; or (3) recorded in substantially

verbatim fashion by stenographic or electronic means contemporaneously with the making of the statement...."

In the instant case, Eiland's prior testimony cannot be deemed "inconsistent" with his refusal to testify at Tyler's trial. At Tyler's trial, Eiland flatly refused to answer any questions regarding the shooting of Jay Bias or the events that occurred at the Prince George's Plaza Mall on December 4, 1990. In fact, aside from giving his name and address and stating that he understood the questions being put to him, Eiland gave no testimony at all. He made clear that he would not answer any questions about the shooting. The effect was virtually the same as if Eiland had not physically taken the witness stand. Clearly, if Eiland had not taken the stand, his prior testimony could not be deemed "inconsistent." Similarly, we hold that Eiland's *refusal to testify* was not inconsistent with his prior testimony, in which he blamed the shooting on Tyler. *See Barksdale v. State,* 265 Ga. 9, 453 S.E.2d 2, 4 (1995)(holding that a prior statement was not admissible because the witness refused to testify and hence "gave no testimony in court with which the prior statement could be judged to be inconsistent"); *State v. Williams,* 182 N.J.Super. 427, 442 A.2d 620, 623 (App.Div.1982)(witness's refusal to answer questions was not "testimony" and thus could not be inconsistent with previous, out-of-court statement); *Davis v. State,* 773 S.W.2d 592, 593 (Tex.Ct.App.1989)("A refusal to testify is not an inconsistent statement.").

The Court of Special Appeals analogized the instant case to a case where a witness claims a loss of memory. We have noted that a witness's testimony that he or she *cannot remember* events about which the witness testified earlier may be inconsistent with the earlier testimony, and hence the earlier testimony may be admissible under *Nance* as a prior inconsistent statement. In *Nance,* we held to be admissible prior statements by witnesses who testified that they remembered some parts of the events described in their earlier statements, but did not remember other parts:

"Harris, McCormick and Brown did not uniformly testify that they had no memory of their sessions with police or the grand jury in which they made the identifications or statements. Instead, they remembered some parts of these earlier events, did not remember others, and outright denied or repudiated other parts. Their lapses of memory conspicuously occurred whenever the questions at trial approached matters potentially implicating Nance and Hardy in the murder."

331 Md. at 572, 629 A.2d at 644–45. We explained:

"Inconsistency includes both positive contradictions and claimed lapses of memory. When a witness's claim of lack of memory amounts to deliberate evasion, inconsistency is implied." (Citations omitted).

*Nance,* 331 Md. at 564 n. 5, 629 A.2d at 640–41 n. 5. *See also* 2 McCORMICK ON EVIDENCE § 251(A), at 121 (John W. Strong ed., 4th ed. 1992)("[T]he tendency of unwilling or untruthful witnesses to seek refuge in forgetfulness is well recognized. Hence, the judge may be warranted in concluding under the circumstances the claimed lack of memory of the event is untrue and in effect an implied denial of the prior statement, thus qualifying it as inconsistent...." (Footnote omitted)).

In holding that Eiland's refusal to testify was inconsistent with his earlier testimony, the Court of Special Appeals concluded that there is no practical distinction between witnesses who testify that they are unable to recall the events about which they testified previously, and witnesses who *refuse to testify at all. See Tyler,* 105 Md.App. at 540, 660 A.2d at 1008. We disagree. The case where the witness claims not to remember events about which he or she testified earlier is far different from the situation in the instant case, where the witness effectively gave *no testimony* at all in the second trial. Because Eiland's prior testimony was not inconsistent with his refusal to testify at Tyler's second trial, *Nance* is inapposite.

One of the reasons a claim of inability to remember differs from a refusal to testify is that a witness who claims memory failure may still be cross-examined, but a witness who abso-

lutely refuses to testify is not available for cross-examination. Even if we were to deem Eiland's 1993 testimony inconsistent with his refusal to testify at Tyler's trial, the testimony still would not be admissible because *Nance* requires that a witness be available for cross-examination concerning his prior inconsistent statement. *See Nance,* 331 Md. at 571, 629 A.2d at 644. Eiland's refusal to testify made him unavailable to be cross-examined by Tyler's counsel concerning his prior statement. *Nance,* 331 Md. at 572, 629 A.2d at 645 (noting that witnesses who refuse to testify are not "available for cross-examination despite their presence in court"); *Mayes v. Sowders,* 621 F.2d 850, 856 (6th Cir.)("A witness is not available for full and effective cross-examination when he or she refuses to testify."), *cert. denied,* 449 U.S. 922, 101 S.Ct. 324, 66 L.Ed.2d 151 (1980). *See also* 2 McCormick on Evidence § 253(2)-(3), at 132–33 ("If a witness simply refuses to testify, despite the bringing to bear upon him of all appropriate judicial pressures, the conclusion that as a practical matter he is unavailable can scarcely be avoided, and that is the holding of the great weight of authority. * * * The witness who falsely asserts loss of memory is simply refusing to testify in a way that he hopes will avoid a collision with the judge. He is present in court, by definition, and subject to cross-examination."). Thus, *Nance*'s cross-examination requirement was not satisfied.

In holding that Eiland's prior testimony was admissible, the Court of Special Appeals frankly acknowledged that it was seeking to "push[ ] out . . . the envelope" of the *Nance* holding in order to prevent Eiland and Tyler from making a "laughingstock out of the criminal justice system." *Tyler,* 105 Md.App. at 516–17, 660 A.2d at 996–97. We agree with the intermediate appellate court's observation that it seems unjust that Eiland and Tyler, at least one of whom appears to have fired the shots that killed Jay Bias, each should be able to take the witness stand in separate trials and blame the other for the shooting without the jury having the opportunity to hear the contradictory testimony of the other. As we have pointed out, however, the root of this apparent unfairness was the

granting of an unnecessary trial severance. *See* n. 2, *supra.* We decline to extend *Nance* or Md. Rule 5–802.1 to apply to prior non-inconsistent statements, or to cases where the declarant is not available for cross-examination concerning the statement.

## C.

■ We also reject the intermediate appellate court's alternative rationale for admitting Eiland's prior testimony—that the testimony was admissible as an "extrajudicial identification" of Tyler as the shooter. *See Tyler,* 105 Md.App. at 552– 59, 660 A.2d at 1014–17. The requirements of the prior identification exception to the hearsay rule are well recognized. In *Nance,* we stated:

"It is well settled in Maryland that a court may admit, as substantive proof, evidence of a third party testifying as to an extrajudicial identification by an eyewitness when made under circumstances precluding the suspicion of unfairness or unreliability, where the out-of-court declarant is present at trial and subject to cross examination. *Bedford v. State,* 293 Md. 172, 176–179, 443 A.2d 78[, 80–82] (1982). ..."

331 Md. at 560–61, 629 A.2d at 639.[5] The Court of Special Appeals held that Eiland's testimony was, at its core, nothing more than an extrajudicial identification of Tyler as the person who shot Jay Bias and was admissible under the authority of *Nance* and *Bedford.* *Tyler,* 105 Md.App. at 559, 660 A.2d at 1017. We disagree.

Eiland's prior testimony consisted of far more than a mere identification of Tyler. The portion of Eiland's testimony read to the jury contained a detailed description of Eiland and Tyler's trip to the Prince George's Plaza Mall, the events leading up to the shooting in the parking lot, and the shooting itself. The critical portion of Eiland's testimony was not that he identified Tyler as being the other person in the car with

---

5. The extrajudicial identification exception to the hearsay rule is now codified in Md. Rule 5–802.1(c). Our holding would be the same under the rule.

him. Other witnesses had already identified Tyler as being present in the green Mercedes and that identification was never contested. Rather, the critical portion of Eiland's testimony was that he was not the person in the Mercedes who fired the fatal shots at the Toyota. Hence, the crucial aspect of Eiland's testimony was not any "prior identification" of the other person in his car; it was which of the two people in his car was the shooter. This hearsay exculpation of himself as the shooter was not admissible under the prior identification exception to the hearsay rule. *See Mouzone v. State,* 294 Md. 692, 702, 452 A.2d 661, 666 (1982)(holding that witness's statement to police was inadmissible under extrajudicial identification exception because statement "simply contained too much," including other hearsay evidence not within any exception), *overruled in part by Nance,* 331 Md. at 569, 629 A.2d at 643.

In any event, the inability of Tyler to cross-examine Eiland rules out admissibility under the pre-trial identification hearsay exception. The prior identification exception to the hearsay rule has the same cross-examination requirement as the prior inconsistent statement exception: the declarant must be available for cross-examination at the trial where the prior identification is admitted. *See Nance,* 331 Md. at 560, 629 A.2d at 639; *Bedford,* 293 Md. at 176–77, 443 A.2d at 80–81. As we explained in section II(B), *supra,* Eiland was not available at Tyler's trial to be cross-examined concerning his prior testimony because he refused to testify. Hence, the testimony, even if it did constitute nothing more than an extrajudicial identification, was inadmissible under the holdings of *Nance* and *Bedford.*

### D.

■ The State suggests in its brief that the "highly unusual circumstances" of this case call for application of the "residual hearsay exception," which, in limited circumstances, allows for the admission of hearsay evidence that does not fall within any recognized exception. *See Brown v. State,* 317 Md. 417, 426, 564 A.2d 772, 776 (1989). *See also* Md. Rule 5–803(b)(24) and 5–804(b)(5). Because the question of whether Eiland's testi-

mony was admissible under the residual exception was not raised in the Court of Special Appeals, we need not decide it here. We point out, however, that even if the issue were raised below, Eiland's testimony would not be admissible under the residual exception because it does not possess the sufficient "guarantees of trustworthiness" required by the exception. *See* Md. Rule 5–803(b)(24) and 5–804(b)(5). When Eiland testified that Tyler was the shooter, he did so at a trial in which *he was charged* in the killing. Hence, Eiland had a powerful incentive to blame the shooting on Tyler. As Chief Judge Wilner explained:

> "[Eiland's] testimony was certainly not given under circumstances precluding the suspicion of unreliability. Eiland was on trial for murder; in his first trial, he had been convicted of second degree murder and use of a handgun and had been sentenced to prison for 30 years. There was never much dispute that one or the other of them fired the fatal shots, so the only reasonable hope that Eiland could possibly have of escaping another conviction was to place all of the blame on Tyler, which is what he succeeded in doing. The fact that his testimony was under oath hardly suffices to wash away that compelling incentive to accuse Tyler. The identification aspect of his trial testimony was therefore inadmissible because it was given under circumstances nine months pregnant with the suspicion of unreliability."

*Tyler*, 105 Md.App. at 570–71, 660 A.2d at 1023 (Wilner, C.J., dissenting). We agree. Eiland's testimony did not possess the sufficient guarantees of trustworthiness necessary to fall within the residual exception. *See Wilson v. State*, 334 Md. 313, 334–35, 639 A.2d 125, 135–36 (1994)(recognizing that a hearsay statement by one accomplice incriminating another is presumptively unreliable).

### III.

We hold that Eiland's 1993 trial testimony does not fall within any exception to the rule against hearsay. Hence, it was inadmissible in Tyler's criminal trial. Because we conclude that the testimony was inadmissible as a matter of

Maryland evidence law, we need not reach the question of whether admitting the testimony violated Tyler's rights under the Sixth Amendment's Confrontation Clause.[6]

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE CONVICTIONS AND REMAND THIS CASE TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR A NEW TRIAL CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY PRINCE GEORGE'S COUNTY.*

---

**6.** For discussion concerning the admissibility of hearsay statements under the Confrontation Clause see *Simmons v. State,* 333 Md. 547, 636 A.2d 463 (1994) and *Chapman v. State,* 331 Md. 448, 628 A.2d 676 (1993).