THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JEROME HOWELL, Defendant-Appellant.

First District (2nd Division)   No. 1—86—1717

Opinion filed August 20, 1991.

Randolph N. Stone, Public Defender, of Chicago (John Kennedy, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Marie Quinlivan Czech, Assistant State's Attorneys, of counsel), for the People.

JUSTICE DiVITO delivered the opinion of the court:

Following a bench trial, defendant Jerome Howell was found guilty of murder and sentenced to 30 years' imprisonment. On appeal, defendant asserts as grounds for reversal that (1) the trial court erroneously admitted the prior inconsistent statements of two witnesses; (2) the refusal of the State to grant immunity to the two witnesses deprived him of his sixth amendment right of confrontation; (3) the trial court erroneously allowed one of the witnesses to testify without benefit of counsel; and (4) the State did not prove him guilty of murder beyond a reasonable doubt.

On June 19, 1982 at approximately 9 p.m., in the vicinity of Keeler and Washington in Chicago, 15-year-old Jeffrey Peebles was shot in the back as he walked past defendant and a group of other youths. Peebles died as a result of the shooting. Later that night, juveniles Michael Downer and Darren Lay were arrested and charged with murder; after juvenile court proceedings, the case against them was dismissed. Defendant was subsequently arrested and charged with murder. In an earlier trial, he was convicted of murder and sentenced to 30 years' imprisonment. That conviction was reversed by this court and the case was remanded for a new trial in a Rule 23 order. *People v. Howell* (1st Dist. 1984), No. 83—2128 (unpublished order under Supreme Court Rule 23).

At the retrial, Ricky Gray testified on behalf of the State. On June 24, 1982, he, Devan Wilson, and defendant committed an armed robbery of a gas station, during which he used a gun that he had received from defendant. The first time Gray saw the gun had been approximately two weeks before the robbery, when it was in defendant's possession. The gun had a chipped hammer, and defendant carried it in a black bag with straps. The police recovered the gun from the scene of the armed robbery. It was stipulated that a firearms expert would testify that the bullet taken from Peebles' body was fired from that gun.

Vernard Smith also testified for the State. Smith was with defendant and a group of friends on June 19, 1982, in the vicinity of Keeler and Washington. As the group approached the corner, Peebles, who lived a few doors away, walked towards them. As Peebles approached, defendant said "Almighty," which was a gang sign for the Vice Lords. Defendant was actually a member of the Black Gangster Disci-

ples, a rival street gang. Peebles then raised his hand and said "Five in the ski [sic]," which was a sign representing the Vice Lords.

Peebles walked past. When his back was to the group, Smith saw defendant reach for something from a purse-like pouch that he carried over his shoulder with a long strap. Defendant pulled out a gun, held it with both hands, and fired at Peebles, who fell face forward onto the ground. As the group fled, two more shots were fired.

The stipulated testimony of Dr. Yusef Konakci was that, from the autopsy on Peebles' body, he determined the cause of his death was a bullet wound of the back.

Christopher Williams and Jerry Bogan were also called to testify on behalf of the State. Since their testimony relates to specific issues raised by defendant in this appeal, it is necessary to understand not only their testimony, but the procedure by which that testimony was elicited.

After Williams stated his name for the record, defendant's attorney objected to any testimony from him because he did not have an attorney present. The court informed defendant's attorney that he had no standing regarding the witness and told the prosecutor to continue with questioning. Williams did not ask for his lawyer; the court later stated that if Williams had requested counsel at that time, the court would have granted the request. Williams then answered 25 questions from the prosecution. He stated that he couldn't recall the answers to eight questions.

Williams testified that he was currently incarcerated in Cook County jail and had a case pending before another circuit court judge. He stated that he lived in Chicago on June 19, 1982, that he knew defendant, and that he hung around with the Impression Black Souls street gang. When asked if he remembered a young man being shot in the vicinity of Keeler and Washington on June 19, 1982, Williams responded, "No. No. It was like spread out, you know, around the neighborhood." Williams identified defendant in court. He stated that he knew Michael Downer, and that he remembered testifying previously in juvenile court in the case against Downer and Lay. When asked whom he was with on the night of the homicide, however, Williams stated that he did not remember. When asked if he was with Vernard Smith or Michael Downer on the night of the shooting, he said he could not remember.

When the prosecutor asked Williams preliminary questions regarding his testimony in juvenile court, defendant's attorney objected and argued that the prosecutor could neither impeach Williams nor

refresh his recollection. The trial court then excused Williams and heard the arguments of counsel.

Williams was again called the next day to testify; again, his attorney was not present. After stating his name and age, he invoked the fifth amendment privilege against self-incrimination and was excused until his attorney could assist him. Immediately following this, the trial court stated that Williams had not waived his fifth amendment privilege by virtue of his testimony of the day before that he "did not recall." After further researching the issue, however, the trial court ruled that Williams had waived his privilege against self-incrimination by his previous testimony.

Williams was called to testify a third time, this time with his attorney present. He refused to answer any questions, invoking the fifth amendment, even though the trial court ruled, as to many of the questions, that the answers could not incriminate him as a matter of law. Defense counsel was given the opportunity to cross-examine the witness, but did not do so.

The trial court found that Williams' refusal to answer and inability to recall were inconsistent with his prior juvenile court testimony against Darren Lay and Michael Downer, and admitted the prior testimony pursuant to section 115—10.1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 115—10.1). Additionally, the court noted that, although he chose not to do so, defense counsel had an opportunity to cross-examine Williams.

The trial court then allowed the State to introduce Williams' prior juvenile court testimony in which he stated that on June 19, 1982, at approximately 9 p.m., he was in the vicinity of Keeler and Washington in Chicago. At that time, he saw defendant shoot a gun that he then placed in a blue or black Jordache bag that looked "[l]ike a long string purse." Though he saw the person who was shot fall, he did not know who that person was.

When Jerry Bogan was called to testify, he stated his name and then invoked his fifth amendment privilege against self-incrimination because his attorney was not present; the trial court excused him and he was recalled the next day, when his attorney was present. At that time, he testified that he was 18 years old and that on the night of the shooting, he was alone.

Bogan refused to answer any questions regarding his membership in a street gang. He then invoked the fifth amendment privilege and refused to answer a series of questions. On several occasions, the trial court stated that Bogan's responses would not incriminate him and di-

rected him to answer. Bogan answered a few questions and then invoked the privilege.

On cross-examination, however, Bogan answered every question asked of him. He stated that he previously testified that he was not present at the time of the shooting of Jeffrey Peebles and that he did not see the shooting. In response to defendant's attorney's question, "And you didn't see a shooting at Keeler and Washington, did you?" and over the advice of his attorney to invoke the fifth amendment, Bogan testified, "my head was turned at the time." He then testified that one of the people on the corner was Darren Lay. He then invoked the fifth amendment throughout redirect examination.

The trial court stated that Bogan had "a very selective ability to answer questions." The court then permitted admission of Bogan's previous testimony from the juvenile court proceedings against Lay and Downer and from defendant's first trial. Both were allowed as prior inconsistent statements under section 115—10.1, and the latter was allowed on the additional grounds that, by invoking his fifth amendment privilege, Bogan had absented himself from the trial.

Bogan's testimony on direct examination at the prior trial was that he was a member of the Black Gangster Disciples and that he saw defendant fire the gun at Keeler and Washington on June 19, 1982. On cross-examination, he said that his head was turned at the time of the shooting and that he did not see who fired the shot. Two or three days prior to the shooting, he had seen defendant at Wilcox and Kostner in Chicago, where he told defendant that he had a gun, which belonged to his aunt's boyfriend. He gave the gun to defendant and did not see it again until a couple of months before the first trial. He identified the gun he was shown at the prior trial as the same gun he had given defendant before the shooting. At the juvenile court proceeding, Bogan testified that he was not in the area of Washington and Keeler at the time of the shooting. He further testified that two days before the June 19 shooting, he gave defendant a gun that belonged to his aunt's boyfriend.

After the State rested, defendant made a motion for acquittal, which was denied by the trial court. Defendant's first witness, Michael Downer, then claimed the fifth amendment privilege. The trial court did not order him to answer questions, and he was excused.

Two defense witnesses, Vanessa Brown and Rotanya Young, both approximately 12 years of age at the time of the shooting, testified that Darren Lay shot Jeffrey Peebles. Both Brown and Young testified that they saw Michael Downer give the gun to Darren Lay, and

that Lay, not defendant, shot Peebles. Both Downer and Lay were subsequently charged with Peebles' murder; after juvenile court proceedings, those charges were dismissed.

The State called Assistant State's Attorney James McCarter in rebuttal. As part of the investigation into the death of Jeffrey Peebles, he spoke with Vanessa Brown and Rotanya Young. They went to the scene of the homicide, where Young said she had been standing when she saw the shooting. McCarter stated that from Young's vantage point, he could not see the corner where the shooting took place because there was a small newspaper stand obstructing the view. Brown's testimony was contradicted by that of Officer E. Waters of the Chicago police department. He testified that he found the body of Jeffrey Peebles on the southeast corner of Keeler and Washington; Brown had testified that Peebles fell on the north side of the street.

The trial court stated that the testimony of Brown and Young was "implausible, incredible and unbelievable." The court found defendant guilty of murder and sentenced him to 30 years' imprisonment. This appeal followed.

I

Defendant maintains that the trial court erred in admitting the prior testimony of Christopher Williams and Jerry Bogan as prior inconsistent statements because both invoked their fifth amendment privilege against self-incrimination. He argues that, since both witnesses refused to testify on constitutional grounds, there was no trial testimony which could be inconsistent with any prior testimony. For reasons that follow, we conclude that the trial court properly ruled that both witnesses offered testimony in this case which subjected them to impeachment by their prior inconsistent testimony, and that the trial court therefore properly admitted their prior inconsistent statements as evidence.

■ Section 115—10.1 of the Code of Criminal Procedure of 1963 provides that evidence of a statement made by a witness is not made inadmissible by the hearsay rule if (1) the statement is inconsistent with the witness' testimony at the hearing or trial; (2) the witness is subject to cross-examination concerning the statement; and (3) the statement was made under oath at a trial, hearing, or other proceeding. Ill. Rev. Stat. 1985, ch. 38, par. 115—10.1.

■ In *People v. Redd* (1990), 135 Ill. 2d 252, 302, 553 N.E.2d 316, our supreme court held that a witness who invokes the fifth amendment does not testify and thus there can be no prior inconsistent statement. The court therefore held that section 115—10.1 is not

applicable where a witness properly invokes his constitutional privilege against self-incrimination.

However, in *People v. Flores* (1989), 128 Ill. 2d 66, 538 N.E.2d 481, the supreme court held that a witness' professed memory loss at trial as to statements made previously before the grand jury was inconsistent with that previous testimony. In so holding, the court reasoned that a witness' prior testimony need not directly contradict testimony given at trial to be considered inconsistent within the meaning of section 115—10.1. The court quoted Dean Wigmore's statement on the issue: " '[W]here a witness now claims to be unable to recollect a matter, a former affirmation of it should be admitted as a contradiction.' (See 3A J. Wigmore, Evidence in Trials at Common Law §1018, at 1061 (Chadbourn rev. 1970)).'' (*Flores*, 128 Ill. 2d at 87.) The court noted that the Federal courts have adopted the Wigmore statement in construing Rule 801(d)(*1*)(A) of the Federal Rules of Evidence (28 U.S.C. R. 801(d)(*1*)(A) (1982)), which is similar to section 115—10.1.

Moreover, the court noted Federal decisions which found inconsistencies not only in direct contradictions, but also in evasive answers, silence, or changes of positions. Finally, the court held that "[t]he determination of whether a witness' prior testimony is inconsistent with his present testimony is left to the sound discretion of the trial court." *Flores*, 128 Ill. 2d at 87-88.

■■ We conclude that this case is governed by the supreme court's holding in *Flores*, and not its holding in *Redd*. Though it is true that both Williams and Bogan invoked their fifth amendment rights, they did in fact testify, and the trial court properly concluded that the testimony they gave was inconsistent with their prior testimony. At trial, Williams denied knowledge of the shooting at Keeler and Washington and stated that he did not remember who was with him that night. That testimony was inconsistent with his juvenile court testimony that he was at the scene of the shooting and that he saw defendant fire a gun which he then placed in a bag. Likewise, Bogan's trial testimony, in response to cross-examination questioning, that he previously had testified that he was not present at the shooting and did not witness it and that his "head was turned at the time," while partially consistent with his prior testimony, was inconsistent with that portion of his prior trial testimony that he had seen defendant fire the gun at Keeler and Washington on June 19, 1982. Further, his testimony that his head was turned was inconsistent with his juvenile court testimony that he was not at the scene.

Though we note that the prior trial testimony of Bogan may have been admissible under the theory that he was an absent witness

whom defendant had an adequate opportunity to cross-examine at the prior trial (see *People v. Horton* (1976), 65 Ill. 2d 413, 358 N.E.2d 1121; *People v. Tennant* (1976), 65 Ill. 2d 401, 358 N.E.2d 1116), we conclude that section 115—10.1 provided an adequate basis for the trial court's admission of his prior testimony.

## II

Defendant's next contention is that, because the State refused to grant immunity to Williams and Bogan, use of their prior testimony deprived him of his sixth amendment right of confrontation. The State responds that neither witness was entitled to immunity since they were not in any danger of incriminating themselves.

The record reflects that the trial court considered the questions put to the witnesses and repeatedly ruled that there was no danger of self-incrimination involved in answering many of them. The determination of whether there is a real danger of incrimination under the particular facts is for the trial court; mere reluctance to testify is not a valid ground for the assertion of the fifth amendment privilege. *Redd*, 135 Ill. 2d at 314.

Here, the trial court correctly ruled that Williams and Bogan had no fifth amendment privilege to invoke, and that, in any case, they had effectively waived the privilege. Defendant's argument that it was error for the State not to grant immunity to Williams and Bogan lacks merit.

## III

Defendant next maintains that the trial court erred in allowing Williams, who was represented by counsel in other unrelated pending charges, to testify without his attorney. The State responds that Williams, as a witness, was not entitled to counsel.

The cases upon which defendant relies (*Arizona v. Roberson* (1988), 486 U.S. 675, 100 L. Ed. 2d 704, 108 S. Ct. 2093; *United States ex rel. Espinoza v. Fairman* (7th Cir. 1987), 813 F.2d 117) are not relevant to the case at bar. In the custodial interrogation setting, a suspect who has invoked his right to counsel is entitled to the assistance of counsel because the purpose of questioning is to elicit an incriminating response. (*Rhode Island v. Innis* (1980), 446 U.S. 291, 64 L. Ed. 2d 297, 100 S. Ct. 1682.) Where, however, the testimony of a witness is used not to implicate the witness, but someone else, neither fifth amendment nor sixth amendment rights are implicated. The recent holding of the United States Supreme Court in *McNeil v. Wisconsin* (1991), 501 U.S. ___, 115 L. Ed. 2d 158, 111 S. Ct. 2204, ade-

quately illustrates that Williams had no right to counsel as a witness in this case. Moreover, the assertion that Williams' rights may have been violated does not mean that defendant's rights were thereby violated.

The trial court committed no error in allowing Williams to testify without counsel.

## IV

Defendant's final argument is that the State failed to prove that he was guilty of murder beyond a reasonable doubt.

When presented with a challenge to the sufficiency of the evidence, a reviewing court is to view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Young* (1989), 128 Ill. 2d 1, 48, 538 N.E.2d 453.) A criminal conviction should not be reversed unless the evidence is so unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt. *Young*, 128 Ill. 2d at 51.

In the instant case, Vernard Smith testified that he saw defendant shoot Jeffrey Peebles. He described how defendant removed the gun from a black pouch he carried over his shoulder with long straps. This testimony was corroborated by Ricky Gray, who saw the gun and the pouch in defendant's possession approximately one week before the shooting. The gun was distinctive in that it had a chipped hammer. The stipulated testimony of the firearms expert established that the bullet which killed Peebles came from that gun.

Defendant contends that both Ricky Gray and Vernard Smith were untrustworthy. He also contends, contrary to the trial court's finding, that Vanessa Brown and Rotanya Young were credible. The credibility of witnesses is primarily a question for the trier of fact, and the resolution of that question will not be upset on appeal even where the evidence is conflicting. (*People v. Harris* (1987), 154 Ill. App. 3d 308, 316, 506 N.E.2d 1353.) Even without the disputed testimony of Williams and Bogan, there was sufficient evidence to lead a rational trier of fact to conclude beyond a reasonable doubt that defendant murdered Jeffrey Peebles.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

SCARIANO, P.J., and HARTMAN, J., concur.