746 A.2d 954

**Michael CORBETT, Sr.**

v.

**STATE of Maryland.**

**No. 755, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

March 1, 2000.

Maureen Glancy, Assistant Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Steven L. Holcomb, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General), Baltimore, and Jack B. Johnson, State's Attorney for Prince George's County, Upper Marlboro, on the brief, for appellee.

Submitted before MOYLAN, BYRNES, and JOHN J. BISHOP, Jr. (Retired, specially assigned), JJ.

BYRNES, Judge.

A jury in the Circuit Court for Prince George's County convicted Michael Corbett, Sr. of attempted second degree rape, child abuse, and attempted third degree sexual offense. He was sentenced to prison for twenty five years without parole for the second degree rape conviction and was given a fifteen year concurrent term for the child abuse conviction. The court merged the third degree sexual offense conviction for sentencing.

On appeal, appellant asks whether the trial court erred in admitting into evidence the prior written and signed statement of the prosecuting witness. For the following reasons, we answer the question affirmatively. Accordingly, we shall reverse the judgments and remand the case to the circuit court for further proceedings.

## FACTS

The charges in this case stemmed from events alleged to have taken place on the morning of August 20, 1997. At that time, twelve year old LaDonna R., the prosecuting witness, was living in an apartment in Suitland, Maryland with her three year old brother Marcus and her mother, Ms. R. Appellant is Marcus's father and Ms. R.'s boyfriend. On the morning in question, LaDonna's mother was at work, and LaDonna was at home with Marcus and appellant.

On direct examination by the State's Attorney at trial, LaDonna identified appellant and testified that something unusual happened between them on August 20, 1997. She stated, however, that she did not remember what had happened. LaDonna testified that she remembered that she had been asleep on the couch in the apartment and that when she woke up, appellant was near her, looking "shocked." The police arrived, took her to the police station, and asked her some questions. LaDonna remembered giving the police a handwritten and signed statement in which she recounted the events that had transpired.

At that point in the examination, the State's Attorney showed LaDonna a written and signed statement. LaDonna identified it as the statement she had given to the police, read it to herself and, after acknowledging that it helped "[a] little bit" to remind her what she had told the police, testified that she still did not remember what had happened to her on the day in question.

LaDonna went on to testify about events peripheral to the allegations against appellant. She stated that she remembered telephoning her mother at work on the day in question and that her mother came home in response; that when her mother arrived home, she and her mother were crying and her mother "h[eld her] in her arms;" that the police came to the apartment and asked her questions, although she could not remember what she told them; that after the police left, she talked to her mother about why she had asked her to come home, but that she could not remember what she told her mother; that her mother took her to the hospital and then took her home; that the police were called again and another officer came to the house; and that she could not remember what she told that police officer.

At the State's Attorney's request, LaDonna identified her handwriting and signature on each page of her written statement. The State's Attorney then questioned LaDonna as follows:

Q: Okay. What can you tell me about what you remember that morning?

A: I remember waking up and running to the phone, calling my mother.

Q: Okay. And when you woke up and ran to the phone to call your mother, was there a reason why you went to call your mother?

A: Yes.

Q: And what was that reason?

A: Something just happened.

Q: Can you tell me what had just happened?

A: I don't remember.

Q: You don't remember?

A: No.

Q: If you look at that statement, does the statement say what happened?

A: Yes.

Q: Can you read that out loud to me?

At that point, defense counsel objected, and this colloquy ensued:

DEFENSE COUNSEL: Your Honor, I will object, but now it's like a bifurcated testimony. She can use the statement to refresh her testimony, but she can't testify from it.

THE COURT: I think [the State's Attorney] is doing it perfectly proper with a child of this age with this statement. It's the beginnings of a statement given and then recanting, and a child of this age of tender years, twelve years old, I think it's perfectly proper.

DEFENSE COUNSEL: We haven't approached the *Nance* problem.

THE COURT: Yes, you have.

DEFENSE COUNSEL: I note she starts testifying what she can remember. If she's not—the *Nance* case directly deals with the issue of whether or not her statement is

totally contradictory now as to what she said at the time. So far, she's not contradicting anything.

THE COURT: She hasn't said anything at this time, because she keeps having problems with relapses [sic] of memory as to the critical issue.

PROSECUTOR: I would like to specifically refer the Court to Page 572 . . .

THE COURT: Where a witness has such loss of memory, the Court may appropriately admit her prior statements. You are going to eventually?

PROSECUTOR: I'm eventually going to move it in.

THE COURT: I think that's perfectly proper, over your objection of course.

LaDonna then read this portion of her statement to the jury:

My name is LaDonna [ ], I'm twelve years old, and this morning my mother's boyfriend was in the house while I was asleep on the couch. My father—my brother, his son was sitting next to me watching TV while I was sleeping. I do not know what he did to me, because I sleep very hard, and I can't hear or feel anything in my sleep. But when I woke up, my shorts and underwear was removed from off of me. When I looked up, [appellant], my mom's boyfriend, was in front of me with his—with my legs spread apart while he was trying to put his penis inside of me. I screamed out mommy, he backed up away from me and said[,] "[O]h, God."

LaDonna repeated that reading her written statement helped remind her "[a] little bit" what had happened on the morning of August 20, 1997. The State's Attorney then asked her: "Is that [the recitation of events in the statement] what you remember from what happened on the morning of August the 20 th, what you read to us?" LaDonna replied, "Yes," and further responded that when she reported those events to the police and answered their questions, she was telling the truth.

The State's Attorney then offered the full written statement into evidence. Defense counsel objected. The trial court

sustained the objection, stating: "So far she's admitted the statement as truthful, so I don't think you really get it in; do you?" At that point, the State's Attorney asked permission to pose additional questions to LaDonna, and the court allowed her to do so.

Thereafter, LaDonna testified that she had not wanted appellant to do what he did to her, that it made her feel "hurt," and that she had told her mother and the police officer who had come to the apartment on the second call the events recounted in her statement. When asked whether she in fact remembered what had happened after she woke up that morning, however, LaDonna testified, "No." The State's Attorney then directed LaDonna to look at her statement again. She did so, and testified that she did remember what had happened after she woke up:

Q: What happened?

A: I was screaming for my mother.

Q: And then what happened?

A: He backed away.

Q: And then what happened?

Defense counsel interjected, objecting on the ground that LaDonna appeared to be reading from her statement instead of testifying from memory as she was purporting to do. The trial judge asked LaDonna, "Do you remember now?" She responded, "No." The State's Attorney then took the written statement from LaDonna, and asked her what she remembered doing after she woke up on the morning in question. LaDonna testified that she remembered screaming for her mother, but that she did not remember anything after that.

The State's Attorney moved again for the admission of LaDonna's statement into evidence. Over objection, the trial court admitted the full document, including several pages that LaDonna had not read to the jury. The trial judge stated: "Well, I really think there are several pages to that statement, and it goes into additional things other than what we just talked about, what she just talked about. She said she doesn't

remember. I think it's admissible, I will overrule the objection."

The State called LaDonna's mother, who was without question a reluctant witness. Ms. R. testified that on the morning in question, she received a telephone call at work from LaDonna, who asked her to come home; that when she arrived home she grabbed LaDonna and hugged her but did not talk to her about what had happened; that police officers arrived and questioned LaDonna but that she did not hear what LaDonna told them; that when LaDonna complained that she did not feel well, she took her to the pediatrician; that the pediatrician told her to take LaDonna home; that she did not have a conversation with LaDonna about what had happened, other than LaDonna telling her she was fine; and that her sister called the police again. Ms. R. acknowledged that she had given a written and signed statement to the police. That statement was admitted into evidence, over objection, upon an express finding by the trial court that it contained several statements that were inconsistent with Ms. R.'s trial testimony.[1]

The State also called Corporal Donald Bell of the Prince George's County Police Department. He testified that on the morning of August 20, 1997, he and his partner responded to a call at a location in Suitland, and there encountered LaDonna, her mother, and appellant. LaDonna appeared upset and scared. He questioned her in the apartment, outside of appellant's presence but in the presence of Ms. R. LaDonna stated that nothing had happened and that she did not want the police there. Later that afternoon, he received a second call to the same apartment. He and his partner returned and found LaDonna, her mother, and Ms. R's sister. Corporal Bell questioned LaDonna again. She said that she had told him before that nothing had happened because she had been afraid. Corporal Bell testified that LaDonna then told him that

---

1. Ms. R.'s statement is not included in the record.

she was sleeping on the couch, and she woke up, her shirt was pulled up, her bra was undone, her panties were pulled down. [Appellant] was laying on top of her between ... her legs, attempting to stick his penis into her vagina. When she woke up, she screamed. [Appellant] jumped back and left, and she at that time tried to call the police.

Corporal Bell's testimony came in without objection.

The defense did not present any evidence. As we have indicated, the jury returned a verdict against appellant for attempted second degree rape, child abuse, and attempted third degree sexual offense.

### DISCUSSION

The parties agree, as they must, that LaDonna's written statement to the police was hearsay.[2] Appellant contends that the trial court erred in admitting the statement into evidence because: 1) it was not admissible under the prior inconsistent statement exception to the rule against hearsay, because it was not inconsistent with LaDonna's trial testimony; and 2) even if it was permissible for LaDonna to read her statement to the jury under the past recollection recorded hearsay exception, the statement itself was not admissible under that exception.

The State responds that the trial court properly admitted the statement into evidence as a prior inconsistent statement because the evasive nature of LaDonna's testimony allowed the trial court to find by implication that her trial testimony was inconsistent with her extrajudicial written statement. It further maintains that even if LaDonna was not being evasive when she testified, her prior statement setting forth the events of August 20, 1997 nevertheless was inconsistent with her testimony that she did not remember those events. The State does not address appellant's contention that the state-

---

2. Md. Rule 5–801(c) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

ment itself was not admissible under the past recollection recorded exception to the rule against hearsay.

Traditionally, when offered to prove the truth of the matter asserted therein, a witness's prior inconsistent statement was hearsay and therefore was not admissible for use as substantive evidence. *Stewart v. State,* 342 Md. 230, 236, 674 A.2d 944 (1996). That long-standing rule was modified by the Court of Appeals in *Nance v. State,* 331 Md. 549, 629 A.2d 633 (1993), which involved a classic "turncoat witness" problem. In *Nance,* three men witnessed a shooting murder in Baltimore City. They gave written statements to the police recounting what they had seen and identifying Nance and two other men as the shooters. They later testified about those events before a grand jury. Yet, when called as witnesses for the prosecution at Nance's circuit court trial,

> [the witnesses] remembered some parts of these earlier events, did not remember others, and outright denied or repudiated other parts. Their lapses of memory conspicuously occurred whenever the questions at trial approached matters potentially implicating Nance and [a co-defendant] in the murder.

*Id.* at 572, 629 A.2d 633. The trial court admitted the prior written statements of the turncoat witnesses into evidence for substantive use, and a conviction followed.

The Court of Appeals affirmed, holding that when a declarant is available for cross-examination at trial, the factual portion of an inconsistent out-of-court statement that he has given that is based on his personal knowledge, is reduced to writing, and is signed or otherwise adopted by him is sufficiently trustworthy to be admitted as probative evidence, and not merely for impeachment. In so holding, the Court rejected the argument that cross-examination of a witness who is claiming to be suffering a loss of memory necessarily is meaningless, and therefore violates the Sixth Amendment Confrontation Clause. It explained that a witness who ostensibly does not remember events about which he has given a

prior statement is not "unavailable" and may be effectively cross examined.[3]

The holding in *Nance* was codified when the Court of Appeals adopted the Maryland Rules of Evidence in 1994. *Tyler v. State*, 342 Md. at 775, 679 A.2d 1127. Maryland Rule 5–802.1, entitled "Hearsay Exceptions—Prior statements by witnesses," provides, in relevant part:

> The following statements previously made by a witness who testifies at the trial or hearing and who is subject to cross-examination concerning the statement are not excluded by the hearsay rule:
>
> (a) A statement that is inconsistent with the declarant's testimony, if the statement was (1) given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding or in a deposition; (2) reduced to writing and signed by the declarant; or (3) recorded in substantially verbatim fashion by stenographic or electronic means contemporaneously with the making of the statement.

Rule 5–802.1 also includes a "past recollection recorded" exception to the rule against hearsay. That exception provides that a witness's statement "that is in the form of a memorandum or record concerning a matter about which the witness once had knowledge but now has insufficient recollection to enable [him] to testify fully and accurately" and "was

---

**3.** In *Tyler v. State*, 342 Md. 766, 679 A.2d 1127 (1996), the Court of Appeals held that the trial court erred in admitting the prior testimony of a witness who later took the stand but refused to answer any questions. The Court held that the witness's refusal to testify was not inconsistent with his prior testimony. It reasoned that the refusal to testify is tantamount to no testimony, and eliminates all opportunity for cross-examination by the defendant. In that case, Tyler and another man, Eiland, had been charged with murder in a shooting incident. They succeeded in obtaining separate trials. After Eiland, who was tried first, testified in his own defense that the shooting was the sole act of Tyler, he was acquitted. Tyler's trial followed. He testified that the shooting was the sole act of the Eiland. The State then called Eiland to the stand to prove that Tyler was the shooter (either through Eiland's consistent testimony or through his prior inconsistent testimony). In response to every question, Eiland refused to testify. The trial court then admitted for probative use Eiland's prior testimony against Tyler.

made or adopted by the witness when the matter was fresh in [his] memory and reflects that knowledge correctly . . . may be read into evidence but . . . may not itself be received as an exhibit unless offered by an adverse party." Md. Rule 5–802.1(e). This past recollection recorded exception codified Maryland case law, with one change. Before the adoption of the Maryland Rules of Evidence, the trial court had discretion to admit the statement itself into evidence. *Holcomb v. State,* 307 Md. 457, 464, 515 A.2d 213 (1986). Now, in keeping with the Federal Rules of Evidence, the trial court is without discretion to admit the written statement into evidence. *See* F.R. Ev. 803(5).[4]

■ Subsection (d) of Rule 5–802.1 excepts from the rule against hearsay "[a] statement that is one of prompt complaint of sexually assaultive behavior to which the declarant was subjected if the statement is consistent with the declarant's testimony." This exception codified Maryland case law holding that "[i]n prosecutions for sex offenses, evidence of the victim's complaint, coupled with the circumstances of the complaint, is admissible as part of the prosecution's case if the complaint was made in a recent period of time after the offense." *State v. Werner,* 302 Md. 550, 563, 489 A.2d 1119 (1985)(citing *Leek v. State,* 229 Md. 526, 527, 184 A.2d 808 (1962), *cert. denied,* 372 U.S. 946, 83 S.Ct. 940, 9 L.Ed.2d 971 (1963); *Shoemaker v. State,* 228 Md. 462, 466–67, 180 A.2d 682 (1962); *Murphy v. State,* 184 Md. 70, 76, 40 A.2d 239 (1944); *Green v. State,* 161 Md. 75, 82, 155 A. 164 (1931)). One pre-

---

4. That rule provides, in pertinent part:
   Hearsay Exceptions; Availability of Declarant Immaterial
   The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
   (5) Recorded recollection. A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly. *If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.* (Emphasis supplied).

condition to the admissibility in the State's case in chief of the details of a prompt complaint of a sexual attack is that the victim testify as a witness at trial. *Harmony v. State,* 88 Md.App. 306, 321, 594 A.2d 1182 (1991).

### *Prior Inconsistent Statement*

This case turns in large part upon whether LaDonna's assertion at trial that she did not remember the central events of August 20, 1997—that is, the alleged actions by appellant constituting the elements of the crimes charged—was inconsistent with her prior written statement recounting those central events. The parties do not dispute that LaDonna was present at trial and subject to cross-examination concerning the statement, and that her trial testimony established that the written statement to the police was her own and was based upon her personal knowledge of the events recounted in it. Thus, they agree that if LaDonna's written statement and her trial testimony were inconsistent, the trial court properly admitted the statement for substantive use, under *Nance* and under Rule 5–802.1(a).

In *Nance,* the Court recognized that, in some circumstances, a witness's claimed lack of memory at trial is inconsistent with his prior statement about the event he claims to have forgotten. The *Nance* Court observed with respect to the professed inability of the three turncoat witnesses in that case to recall certain events recited in their written statements:

> Inconsistency includes both positive contradictions and claimed lapses of memory. *State v. Devlin,* 251 Mont. 278, 825 P.2d 185, 187 (1991). *When a witness's claim of lack of memory amounts to deliberate evasion, inconsistency is implied.* *People v. Johnson,* [842 P.2d 1, 18 (Cal.1992) ].

331 Md. at 564, n. 5, 629 A.2d 633. (Emphasis added). The Court explained:

> The tendency of unwilling or untruthful witnesses to seek refuge in forgetfulness is well recognized. 2 McCormick on Evidence § 251, at 121 [4 th ed.1992]. When witnesses

display such a selective loss of memory, a court may appropriately admit their prior statements.

*Id.* at 572, 629 A.2d 633 (citing *State v. Lenarchick,* [247 N.W.2d 80, 90–91 (Wis.1976) ]; *State v. Osby,* [793 P.2d 243, 250 (Kan.1990) ] ); *see also People v. Howell,* 218 Ill.App.3d 789, 161 Ill.Dec. 461, 578 N.E.2d 1107, 1111 (1991)(" 'Where a witness now claims to be unable to recollect a matter, a former affirmation of it should be admitted as a contradiction.' ")(quoting 3A J. Wigmore, *Evidence in Trials at Common Law,* § 1018, at 1061 (Chadbourn rev.1970)).

We have found no Maryland cases more specifically addressing the circumstances under which a trial court may imply inconsistency from a witness's testimony of lack of memory. A number of federal appellate courts interpreting the meaning of the word "inconsistent" in Federal Rules of Evidence section 801(d)(1)(A), which exempts from hearsay a statement that was given under oath at a trial, hearing, deposition, or other proceeding and is inconsistent with the trial testimony of the witness, have held that inconsistency may be implied from testimony of loss of memory if the memory loss is feigned and not actual. *See United States v. Knox,* 124 F.3d 1360, 1364 (10th Cir.1997)("whe[n] a declarant's memory loss is contrived, it will be taken as inconsistent with a prior statement."); *United States v. Bigham,* 812 F.2d 943, 946–47 (5th Cir.1987)("selective memory loss ... more convenient than actual"); *United States v. DiCaro,* 772 F.2d 1314, 1321–22 (7th Cir.1985)(trial court did not abuse discretion when it admitted witness's prior inconsistent statement upon a finding that witness was lying when he professed to suffer from amnesia); *United States v. Rogers,* 549 F.2d 490, 496 (8th Cir.1976), *cert. denied,* 431 U.S. 918, 97 S.Ct. 2182, 53 L.Ed.2d 229 (1976)(holding that when an alleged confederate in an armed robbery testified that he could not remember the robbery and could not remember the contents of a statement that he had given to an FBI agent about the robbery (although he did remember giving the statement), the trial court properly drew the inference that the witness was fully aware of the contents of his prior statement and concluded that his

claimed lack of memory was inconsistent with his prior written statement.); *see also Bigham, supra,* 812 F.2d at 947 n. 2, (" '[I]t would seem that the prior statement should not be included under 801(d)(1)(A) if the judge finds that the witness genuinely cannot remember, and the period of amnesia or forgetfulness is crucial as regards the facts in issue.' ") (quoting 4 J. Weinstein and M. Berger, Weinstein's [Federal] Evidence § 801(d)(1)(A), at 801–120 (1985)); *Knox, supra,* 124 F.3d at 1364 (observing that courts typically allow for admission of prior testimony under 801(d)(1)(A) when the witness's current lack of recollection is deemed a contrivance)(citing Michael H. Graham, Federal Practice and Procedure, § 6582, at 183 n. 9 (int. ed.1992)).

A comparison of two California cases illustrates the point that for a witness's attestation of memory loss to render his prior statement inconsistent, the asserted lack of memory must be a contrivance. In *People v. Green,* 3 Cal.3d 981, 92 Cal.Rptr. 494, 479 P.2d 998 (1971), the trial court found that a witness's testimony attributing his lack of memory of some events and memory of other contemporaneous events to "selective amnesia" was inherently incredible and amounted to an implied denial of the facts he had testified about during a preliminary hearing and of his prior extrajudicial statement. On that basis, the witness's prior statements were admitted substantively, as prior inconsistent statements, under the California Evidence Code. On appeal, the California Supreme Court affirmed. *See also People v. Arias,* 13 Cal.4th 92, 51 Cal.Rptr.2d 770, 913 P.2d 980, 1018 (1996), *cert. denied,* 520 U.S. 1251, 117 S.Ct. 2408, 138 L.Ed.2d 175 (1997)("When the trial court concludes, on substantial evidence, that [a witness's] professed lapses of memory are false, evasive devices to avoid truthful answers, it may admit, as 'inconsistent,' the witness's prior statements describing the events the witness now claims to have forgotten.").

By contrast, in *People v. Simmons,* 123 Cal.App.3d 677, 177 Cal.Rptr. 17 (1981), the appellate court concluded that a witness's testimony about his actual loss of memory about an event was not inconsistent with his prior statement about the

event. In that case, a witness who had given the police a signed statement implicating the defendant in an arson later suffered a serious head injury, and developed retrograde amnesia. At the defendant's preliminary hearing, the witness testified that while he could remember some past events, including events that had taken place around the time of the arson, he could not remember the events that he had memorialized in his statement. Although he did not remember giving the statement, he acknowledged that the statement bore his signature and that he had no reason to think that what he had told the police in the statement was not true. After a magistrate ruled the statement admissible, the trial court dismissed the charges, finding that the statement was inadmissible hearsay not falling into the prior inconsistent statement or past recollection recorded exceptions.

The appellate court affirmed, and in so doing rejected the argument that the record supported a reasonable inference by the magistrate that the witness was being evasive. The court observed not only that the magistrate had made no such finding but also that, to the contrary, the magistrate had found that because the witness was suffering from retrograde amnesia, one could not tell whether his statements were "false or true, accurate or not." *Simmons*, 177 Cal.Rptr. at 19–20. In explaining its holding, the court refused to "disregard the distinction in *Green* and hold that any failure of recollection, legitimate or otherwise, may be deemed an implied inconsistency." *Id.* at 20.

In the case *sub judice*, the State cites *Thomas v. State*, 113 Md.App. 1, 686 A.2d 676 (1996), *cert. denied*, 345 Md. 237, 691 A.2d 1312 (1997), for the proposition that when a witness testifies to a lack of recollection about an event, that testimony is inconsistent with his prior written statement about the event irrespective of whether his lack of memory is feigned or actual. That is not, however, the holding in *Thomas*. In that case, a witness to a shooting gave the police a written and signed statement placing the defendant at the scene of the crime. He also selected a photograph of the defendant out of an array and identified him as being present at the scene. At

trial, the witness admitted that he had been at the scene when the shooting occurred but recanted the earlier statement and identification, saying that he did not remember making the statement and stating that the signature on the photo was the "[signature] that they made me sign." 113 Md.App. at 4, 686 A.2d 676. The trial court admitted the witness's statement into evidence under Rule 5–802.1(a), as a prior inconsistent statement. On appeal, the defendant *conceded* that the witness's statement had been properly admitted into evidence as a prior inconsistent statement.[5] Unlike in this case, at trial, the witness in *Thomas* recanted his prior statement placing the defendant at the scene. There was no issue in that case about whether the witness in fact remembered the circumstances surrounding the shooting incident.

We are persuaded that when a witness truthfully testifies that he does not remember an event, that testimony is not "inconsistent" with his prior written statement about the event, within the meaning of Rule 5–802.1(a). A witness who professes not to remember an event in an effort to avoid testifying about it in fact remembers it. He is able to testify about the event, but is unwilling to do so. Logic dictates that inconsistency may be implied in that testimony because by claiming that he does not remember an event that he does remember, the witness is denying, albeit indirectly, that the event occurred. Indeed, we previously have applied this reasoning to hold that inconsistency may be implied from a witness's failure to testify about a matter entirely when under the circumstances he reasonably would be expected to do so. *See Hardison v. State,* 118 Md.App. 225, 240, 702 A.2d 444 (1997). Inconsistency may be implied from partial testimony, i.e., an omission, because it is reasonable to infer from the witness's ability to testify partially that he has the ability to testify fully but is unwilling to do so.

---

**5.** The defendant's evidentiary issue on appeal concerned the admission of testimony by the witness's brother about statements made by the witness.

■ By contrast, a witness who truly is devoid of memory of an event lacks the *ability* to testify fully and accurately about it, not the willingness to do so. His avowal of no memory of the event is not an implied denial; rather, it is a true statement of lack of memory. When a witness actually lacks memory of an event he once knew about, and thus is unable to testify about it, the past recollection recorded exception to the rule against hearsay will apply, if it is established through the witness that when the writing was made, the events were fresh in his mind, and that the written statement is authentic and accurately reflects the knowledge he once had. *Baker v. State,* 35 Md.App. 593, 598, 371 A.2d 699 (1977).

The State maintains that the selective manner in which LaDonna testified about the events of August 20, 1997, demonstrated that she was trying to evade the questions posed to her relating to appellant's conduct, i.e., that she in fact remembered the central events, but was unwilling to testify about them. It concedes, however, that from the cold record, it is impossible to determine whether LaDonna was being evasive in her answers or whether she was unable to answer because her memory was faulty.

■ The federal cases hold that trial courts have considerable discretion in determining whether a witness's testimony truly is inconsistent with his prior testimony. *See, e.g., United States v. Bonnett,* 877 F.2d 1450, 1463 (10th Cir.1989); *United States v. Russell,* 712 F.2d 1256, 1258 (8th Cir.1983)(per curiam); *United States v. Dennis,* 625 F.2d 782, 795 (8th Cir.1980). We agree that the decision whether a witness's lack of memory is feigned or actual is a demeanor-based credibility finding that is within the sound discretion of the trial court to make. In this case, we are not taking issue with the court's exercise of discretion. Rather, we are confronted with an absence of any finding on the issue. The admissibility of LaDonna's prior inconsistent statement depended upon a preliminary finding by the court that her lack of memory of the events in question was not actual, but a contrivance. The court erred in permitting LaDonna's statement to come into

evidence as a prior inconsistent statement without first making a finding on that preliminary, predicate issue.   Md. Rule 5–104.

### Past Recollection Recorded

■   If the trial court had made a finding on the predicate issue and had determined that LaDonna truly was lacking in memory of the central events of August 20, 1997, her past statement to the police about those events properly would have been admissible into evidence under the "past recollection recorded" exception to the rule against hearsay, which is set forth in Rule 5–802.1(e).   The evidence established that LaDonna's statement about the events in question was in memorandum form, that it had been made when the events were fresh in her mind, and that it concerned facts about which she once had knowledge, but at the time of trial had insufficient recollection to allow her to testify fully and accurately.

■   As we have explained above, under Maryland's version of the "past recollection recorded" hearsay exception, once the criteria set forth in Rule 5–802.1(e) have been met, the recorded memorandum may be *read* into evidence.   Unless introduced by the other party, the memorandum itself may not come into evidence, however, and it does not go the jury during deliberations for that reason.

In this case, after LaDonna read a portion of her written statement to the jury, the entire statement was introduced into evidence, over objection.   To the extent that the trial court could have properly permitted LaDonna to read the excerpt from her statement to the jury as a past recollection recorded under Rule 5–802.1(e), it erred in admitting the written statement into evidence, contrary to the dictates of that rule.

### Prompt Complaint of Sexually Assaultive Behavior

■   Finally, we note that LaDonna's statement was not admissible under Rule 5–802.1(d) as a prompt complaint by a

witness of sexually assaultive behavior because, to qualify under this rule, the statement must be consistent with the witness's testimony at trial. Although LaDonna's trial testimony about some peripheral facts was consistent with her recitation of those facts in her written statement, none of those facts concerned sexually assaultive behavior on appellant's part. Thus, Rule 5–802.1(d) was not applicable.

### *Harmless Error Analysis*

As we have explained, the trial court erred in admitting LaDonna's written statement into evidence as a prior inconsistent statement because it did not ascertain, as a predicate fact to admissibility, that LaDonna's claimed lack of memory of the events set forth in the statement was a contrivance, and that the written statement thus was inconsistent with her trial testimony. If the trial court had taken LaDonna's claim of lack of memory at face value, it could have permitted her to read the contents of her written statement to the jury as a past recollection recorded because the criteria for that exception were met; it erred, however, in admitting the written statement itself into evidence. Because LaDonna's description of the events in question would have come into evidence one way or the other—either through her written statement, as a prior inconsistent statement, or through her reading of her written statement, as a past recollection recorded—our analysis of whether the trial court's errors were prejudicial or harmless centers on the impact that the writing itself may have had upon the jury.

In a criminal case, the standard for assessing if error was harmless is whether, after viewing the error in relation to the totality of the evidence, we are able to declare a belief, beyond a reasonable doubt, that the error did not influence the verdict. If we cannot do so, the error cannot be deemed harmless. *See, e.g., Grier v. State,* 351 Md. 241, 263, 718 A.2d 211 (1998); *Williams v. State,* 342 Md. 724, 753, 679 A.2d 1106 (1996); *West v. State,* 124 Md.App. 147, 169, 720 A.2d 1253 (1998), *cert. denied,* 353 Md. 270, 725 A.2d 1068 (1999).

As we have indicated, before the adoption of Rule 5–802.1(e), trial judges were given discretion to permit the proponent of a writing qualifying as "past recollection recorded" to introduce the document itself into evidence. *See Holcomb v. State*, 307 Md. 457, 464–68, 515 A.2d 213 (1986). Rule 5–802.1(e) made the writing itself inadmissible, thus eliminating that discretion. The change was effected to address the concern that the jury in a given case would place more weight on the past recollection recorded testimony than it would place on other live witness testimony. *See Lynn McLain, Maryland Rules of Evidence*, 229 (1994 ed.).[6]

In the case *sub judice*, because the document that was received into evidence in error was the only direct testimony by the crime victim about the events constituting the criminal act, the danger that the jury may have placed undue weight on the orally recited "past recollection recorded" testimony was real. We recognize that that danger was mitigated, to some extent, by the fact that LaDonna's version of the critical events came into evidence indirectly, through Corporal Bell.

The harmless error analysis in this case is most greatly affected, in our view, by an examination of the contents of the document that came into evidence. In fact, when LaDonna read her written statement to the jury, she only read a small portion of it. The entire statement is seven pages, four of which are a handwritten narrative of events by LaDonna and three of which are a series of questions written by a police officer next to which LaDonna wrote answers. Only part of the four page narrative was read into evidence by LaDonna. Nevertheless, the entire seven page statement was admitted into evidence. The three written pages of questions answered by LaDonna that were not read to the jury, but came into evidence, included recitations of events that occurred after the incident about which LaDonna testified from memory, and

---

**6.** Rule 5–802.1(e) does permit the writing itself to be received into evidence if offered by the adverse party. That did not occur in this case.

that she could not have testified about as "past recollection recorded."

Moreover, the narrative set out in those pages recounted damaging information about appellant that did not come into evidence other than through the written statement, much of which would have been inadmissible in any event: that appellant told LaDonna immediately after the incident that he was drunk and did not know what he was doing; that appellant took the telephone away from LaDonna when she went to call her mother; that LaDonna's mother had instructed her to lock all of the doors after appellant had left; and that LaDonna was scared of appellant "because he [was] very abusing to [her] mother" and she was afraid he would "come back to do something bad" to both of them.

Given the above, we are unable to declare a belief, beyond a reasonable doubt, that the trial court's error in allowing LaDonna's full written statement to come into evidence did not influence the verdict.

**JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE'S GEORGE'S COUNTY FOR FURTHER PROCEEDINGS. COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.**